148 P.3d 1081 (2006)
Carolyn E. KORST and Steven G. Korst, wife and husband, Appellants,
v.
Phillip R. McMAHON, Sr. and Mona D. McMahon, husband and wife, Respondents.
No. 32684-1-II.
Court of Appeals of Washington, Division 2.
December 12, 2006.
Stephen D. Cramer, Attorney at Law, Federal Way, WA, for Appellants.
Phillip R. Sr. McMahon (Appearing Pro Se), Mona D. McMahon (Appearing Pro Se).
BRIDGEWATER, P.J.
¶ 1 Carolyn Korst appeals from a bench trial that dismissed her claims against her father for childhood sexual abuse on statute of limitations grounds. We reverse and remand the matter for trial.
¶ 2 Beginning when she was eight years old, Carolyn Korst's father, Phillip McMahon, sexually abused her. When she was 14, she told her mother that her father had been raping her, and her mother called Child Protective Services (CPS). McMahon admitted to CPS that he had raped his daughter, but CPS allowed him to return home after only one night in jail.
¶ 3 Many years later, in 1995, Korst wrote a letter to her father complaining that she felt her father had mistreated her on a number of instances. Among her list of grievances, she complained that her father raped her when she was a child. Korst sent copies of the letter to her parents and each of her siblings.
¶ 4 Seven years later, in January 2002, Korst started seeing a counselor, Josephine Karla, because of problems with her son. During her five sessions with Karla, Korst *1083 disclosed that she had been sexually abused as a child. During these sessions, Korst learned that the sexual abuse had probably caused some of her problems.
¶ 5 Korst also started seeing Dr. Walter Teachout, a clinical psychologist, who diagnosed her with post traumatic stress disorder (PTSD) due to the childhood sexual abuse. Dr. Teachout noted that Korst was experiencing many physical and emotional symptoms consistent with PTSD, including: (1) severe self-esteem issues, (2) shame and guilt, (3) emotional fatigue, (4) difficulty maintaining friendships, (5) early promiscuity, (6) panic attacks, (7) gastro-intestinal symptoms, (8) paranoia, (9) depression, (10) anxiety, (11) nightmares, (12) flashbacks, (13) teeth grinding, (14) crying spells, (15) social withdrawal, (16) insomnia, and (17) others. Dr. Teachout believed that Korst's childhood sexual abuse had caused these symptoms.
¶ 6 After this counseling, Korst sued her father and mother, alleging: (1) sexual abuse, (2) assault and battery, (3) outrage, (4) intentional tort, (5) gross negligence, and (6) intentional and/or negligent infliction of emotional distress. The McMahons denied Korst's allegations and asserted the statute of limitations as an affirmative defense.
¶ 7 At the bench trial, the McMahons moved for a directed verdict after Korst rested her case. Based on Korst's 1995 letter, the McMahons contended that they were entitled to a directed verdict because the statute of limitations on Korst's claims had expired. The trial court agreed and dismissed Korst's claims with prejudice, entering findings of facts and conclusions of law.

ANALYSIS
¶ 8 Korst contends that the trial court erred in finding that she knew in 1995 that her father's sexual abuse had caused her symptoms. Specifically, she assigns error to findings of fact 19 through 23.[1] She further contends that, because of the erroneous factual finding, the trial court mistakenly concluded that the statute of limitations barred her claim.
¶ 9 We must first determine how to construe the trial court's decision. Even though the McMahons moved for a directed verdict, because this was a bench trial, the trial court correctly interpreted their motion as one for involuntary dismissal under CR 41(b)(3). CR 41(b)(3) permits the trial court to render a judgment on the merits against the plaintiff and enter findings of fact as provided in CR 52(a) to support its decision. Postema v. Pollution Control Hearings Bd., 142 Wash.2d 68, 120, 11 P.3d 726 (2000). Thus, in granting the McMahons' motion, the trial court considered all of the evidence and the credibility of the witnesses. Because the trial court rendered a judgment, complete with findings and conclusions, we review the trial court's findings of fact and conclusions of law.
¶ 10 We review a trial court's findings of fact and conclusions of law in two steps. First, we review findings of fact under a "substantial evidence standard, defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wash.2d 873, 879, 73 P.3d 369 (2003). Applying this deferential standard, we view all reasonable inferences from the evidence in the light most favorable to the prevailing party. Sunderland Family Treatment Servs. v. City of Pasco, 127 Wash.2d 782, 788, 903 P.2d 986 (1995). Where there is substantial evidence, we will not substitute our judgment for that of the trial court even though we might have resolved a factual dispute differently. Sunnyside, 149 Wash.2d at 879-80, 73 P.3d 369. Second, we determine whether the findings of fact support the conclusions of law. Landmark Dev., Inc. v. City of Roy, 138 Wash.2d 561, 573, 980 P.2d 1234 (1999). We review the conclusions de novo. Sunnyside, 149 Wash.2d at 880, 73 P.3d 369.
¶ 11 The specific issue in this case is whether the trial court's properly determined that the statute of limitations applied to bar *1084 Korst's suit. Before examining the evidence to determine if it is sufficient to support the trial court's findings, we turn first to an analysis of the unique statute of limitations for childhood sexual abuse:
All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
. . . .
(c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought.
RCW 4.16.340(1)(c)[2] (emphasis added).
¶ 12 Most statutes of limitations impose a duty on the plaintiff to discover injuries. But this subsection is unique in that it omits the language "or reasonably should have discovered." In fact, the legislature included a "Findings  Intent" section, with this statute, to explain why childhood sexual abuse cases arising from intentional conduct warrant a unique statute of limitations. As Division Three of this court noted in Hollmann v. Corcoran, 89 Wash.App. 323, 334, 949 P.2d 386 (1997), legislative findings (4) and (5) explain this specific omission:
(4) The victim of childhood sexual abuse may be unable to understand or make the connection between childhood sexual abuse and emotional harm or damage until many years after the abuse occurs.
(5) Even though victims may be aware of injuries related to the childhood sexual abuse, more serious injuries may be discovered many years later.
RCW 4.16.340. When the legislature amended RCW 4.16.340 in 1991, it "intend[ed] that the earlier discovery of less serious injuries should not affect the statute of limitations for injuries that are discovered later." Laws of 1991, ch. 212, § 1. In light of the legislature's findings, the Hollmann court interpreted the plain language of RCW 4.16.340(1)(c) as not imposing a duty on the plaintiff to discover her injuries in childhood sexual abuse cases. Hollmann, 89 Wash.App. at 334, 949 P.2d 386.
¶ 13 Moreover, this special statute of limitations is unique in that it does not begin running when the victim discovers an injury. Instead, it specifically focuses on when a victim of sexual abuse discovers the causal link between the abuse and the injury for which the suit is brought. RCW 4.16.340(1)(c). The legislature specifically anticipated that victims may know they are suffering emotional harm or damage, but not be able to understand the connection between those symptoms and the abuse. We are bound to follow the legislature's intent. Born v. Thompson, 154 Wash.2d 749, 776, 117 P.3d 1098 (2005).
¶ 14 Finally, we note that the defendant bears the burden of proof as to the statute of limitations. Haslund v. City of Seattle, 86 Wash.2d 607, 620-21, 547 P.2d 1221 (1976). In the context of this statute of limitations, the McMahons needed to prove that Korst actually knew that the sexual abuse caused her symptoms and that she failed to bring her claim before the statute of limitations had expired.
¶ 15 We hold that insufficient evidence supported the trial court's finding that Korst knew of the causal connection between her abuse and her injuries. In finding against Korst, the trial court relied on the 1995 letter that she wrote to her father. Impressed by the letter, the trial court found:
But for the writings of Plaintiff Carolyn E. Korst (Trial Exhibits 1, 7, and 8) the Court would have agreed with Dr. Teachout and Plaintiff Carolyn E. Korst, as well as with Plaintiffs' other witnesses, and found in favor of the Plaintiffs on the issue of when Plaintiff Carolyn E, (sic) Korst knew or should have known of the causal connection between the childhood sexual abuse and the symptoms experienced by Plaintiff Carolyn E. Korst after she left the McMahon household.
Clerk's Papers (CP) at 29.
¶ 16 These writings, which consisted primarily *1085 of Korst's 1995 letter to her father,[3] do not provide substantial evidence to support the trial court's finding that Korst knew of the causal connection between her abuse and her symptoms. The letter begins with Korst telling her father that she is angry because he sold Korst and her husband a water bed pedestal, but McMahon thought that the Korsts had defaulted on the payments. In fact, Korst testified that the primary purpose of the letter was to confront her father about the water bed pedestal. After addressing the pedestal issue, Korst took the opportunity to list a few other grievances that she had with her father. First, she told her father,
I was just a kid, what 13-14 when I was raped by Dad. Do you know for the victim (me) Its [sic] something that never goes away. How do you feel about that Dad? You have haunted me for 20-22 years. You have never even once said you were sorry. I don't think you are.
I have tried to forgive you in my heart & mind, but the fact is I can't. Each time something happens it disgusts me in the way you treat people + it brings all the feelings back.
It's just constant hurts, like the harmonica issue. . . .
Ex. 1 at 2. In the letter, Korst continued to complain about her father telling her brothers and sisters that she stole a harmonica. She also complained in general that her father thought she was a "trouble maker" and that he did not spend enough time with his grandchildren. Ex. 1 at 3. The trial court found that this letter proved that Korst knew in 1995 that her father's sexual abuse had caused her varied physical and emotional problems.
¶ 17 We disagree. Korst's letter does not suggest that she knew that her father's abuse had caused her many injuries. The letter simply indicates that she resented her father for sexually abusing her, not that Korst understood the effects of that abuse. This is especially true as the letter seems to equate her reaction to her father's accusations about a stolen harmonica with her feelings about the rape. From Korst's admissions that the abuse is "something that never goes away" and that McMahon had "haunted" her for over 20 years, a reasonable person could not infer more than the abuse haunted her. Ex. 1 at 2.
¶ 18 But that is not the same as inferring she knew her injuries were caused by the rape. Presumably, victims of childhood sexual abuse know that they have been hurt, but RCW 4.16.340 makes it clear that a plaintiff's cause of action does not accrue until she knows that the sexual abuse has caused her more serious injuries. Laws of 1991, ch. 212 § 1. This letter merely states that the original pain of being abused has not gone away, but it does not prove that Korst knew her father's sexual abuse had caused her more serious physical and emotional symptoms. Therefore, this letter does not support a finding that Korst "discovered that the act caused the injury for which the claim is brought." RCW 4.16.340(1)(c).
¶ 19 Furthermore, none of the testimony at trial provided sufficient evidence to support the trial court's finding. On cross-examination, Korst admitted that she knew for many years that she was angry at her father, in part, for raping her. But RCW 4.16.340(1)(c) requires Korst to have known for more than three years before filing her claim that her father's abuse had caused her injurious symptoms. Even with her admission, a reasonable person could not infer that she knew that her father's abuse had caused her ulcers or had caused her to grind her teeth at night. Therefore, Korst's testimony is not substantial evidence to support the trial court's finding.
¶ 20 Steven Korst admitted that he wondered about Korst's irritability after a night of intimacy, but he never discussed it with his wife. But this admission indicates nothing other than he suspected she had emotional injuries. His testimony cannot support an inference that Korst knew in 1995 that her father's sexual abuse had caused all her emotional and physical symptoms.
*1086 ¶ 21 Korst's three sisters also testified, but all three denied that Korst knew of a causal link between her suffering and the rape. In fact, Merri Pomeroy testified that Korst first associated her emotional and physical problems to the sexual abuse during counseling in 2002. And that date was within the statute of limitations.
¶ 22 Dr. Teachout's testimony also failed to establish that Korst knew in 1995 that her rape caused her symptoms. Dr. Teachout testified that, in his professional opinion, Korst did not understand that her father's abuse had caused her symptoms before 2002. In fact, he opined that a person with no psychology background would "simply not have the capacity to link these varied miscellaneous feelings to posttraumatic stress." 1 Report of Proceedings (RP) (Sept. 9, 2004) at 144.
¶ 23 From this evidence, the trial court could not reasonably infer that Korst already knew in 1995 that her father's sexual abuse caused her physical and emotional symptoms. Therefore, substantial evidence does not support the trial court's finding.
¶ 24 In this case, because substantial evidence did not support a finding that Korst knew earlier than 2002 that her father's sexual abuse had caused her symptoms, the trial court's legal conclusion that the statute of limitations barred this suit is incorrect and the trial court erred in granting McMahon's motion for an involuntary dismissal.
¶ 25 Reversed and remanded for new trial.
We concur: ARMSTRONG and HUNT, JJ.
NOTES
[1] Findings of fact 19 through 23 are essentially one finding: that Korst knew in 1995 that her father's sexual abuse caused her physical and emotional injuries. For the purposes of this analysis, all five findings will be collectively referred to as the trial court's finding.
[2] RCW 4.16.340, as amended in 1991, applies to this case even though McMahon sexually abused Korst before the legislature passed this statute. See C.J.C. v. Corp. of the Catholic Bishop of Yakima, 138 Wash.2d 699, 705-07, 985 P.2d 262 (1999) (applying a 1988 version of the statute to claims based on intentional sexual abuse occurring in the 1970s).
[3] Exhibit 7 is a letter Carolyn wrote to her parents in 2002, making it irrelevant to the present analysis. Exhibit 8 is merely Carolyn's declaration stating that she did not know about the connection until beginning therapy in 2002.