IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| P.L., a single male, and S.B., a married but separated female, | ) ) ) | No. 71667-1-I |
| Appellants, | ) ) | DIVISION ONE |
| v. | ) ) ) | |
| WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: October 20, 2014 |

BECKER, J. — The issue in this appeal is application of the statute of limitations to a claim of childhood sex abuse. Although the two plaintiffs have had counseling throughout their adult lives and have had diagnoses of posttraumatic stress disorder, the record does not conclusively establish that they knew, until recently, that their emotional injuries were caused by the acts of abuse they experienced in foster care. The order dismissing their claims as time barred is reversed.

The plaintiffs sued the Department of Social and Health Services for negligence in failing to protect them from sexual abuse they allegedly suffered while in foster care in the 1980s.

In 1984, the Department learned that S.B., then 11 years old, was being sexually assaulted by her stepfather, Roy Lewis. Lewis's son P.L., who was

younger, witnessed the abuse. The mother of the two children was not available to care for them. The Department placed the two children in different foster homes.

S.B. was placed in foster care in the home of Raymond Towns, where she stayed for approximately 3 years. During this time, S.B. had counseling sessions related to her stepfather's mistreatment of her. She alleges that Towns drove her to and from these counseling sessions and that Towns regularly molested her during their return trips. S.B.'s claim against the Department arises from her allegation that she told the Department caseworker several times about what Towns was doing. According to S.B., the caseworker did not believe her and did nothing to protect her from Towns. S.B. remained in that foster placement until the Department learned that similar allegations had been made against Towns by another student at S.B.'s school. S.B. was approximately 14 years old when she was removed and placed elsewhere.

P.L. had a number of failed foster care placements. In September 1987, he was placed in the Deschutes Children's Center located in Tumwater, Washington. P.L. claims he was assaulted while there, first physically and then sexually, by other residents. He and S.B. had the same Department caseworker. The caseworker was summoned to the center shortly after the assault took place. P.L. alleges that although he told the caseworker what had happened, she did not remove him immediately and he continued to be sexually abused by other residents. P.L. was placed in a foster home at the end of the year. A year later, he was moved to a different foster home where, he claims, he was again

2

subjected to physical and sexual abuse that he reported to the caseworker who again did not intervene. P.L. claims he ran away because he feared further abuse. He was approximately 14 years old at the time.

As adults, both plaintiffs have had difficult lives. Each has developed a criminal history, and each has received counseling for emotional distress. While driving under the influence, S.B. caused a car crash that killed her best friend. She served time for this offense and had a mental health evaluation for severe depression while in custody. P.L. underwent similar evaluations after several suicide attempts.

On March 2, 2012, the plaintiffs initiated this litigation, claiming emotional damage caused by the sexual abuse they allegedly suffered while in placements supervised by the Department. The Department moved for summary judgment, arguing that the negligence claims are time barred by RCW 4.16.340(1)(c), a statute of limitations. Plaintiffs opposed the motion with their own declarations and the declaration of their expert witness, Dr. Robert Wynne.

Dr. Wynne evaluated the two plaintiffs in 2013. After interviewing them personally and reviewing records, Dr. Wynne wrote a comprehensive report, concluding that none of the plaintiffs' previous psychological evaluations were intended to address causation. In his opinion, the plaintiffs did not realize until recently that the childhood sexual abuse they experienced in out-of-home placement was a cause of the posttraumatic stress disorder for which they now seek an award of damages.

The trial court entered summary judgment in favor of the Department on August 30, 2013, and dismissed their claims with prejudice as time barred under RCW 4.16.340(1)(c). This appeal followed.

Orders granting summary judgment are reviewed de novo, and all inferences must be drawn in favor of the nonmoving party. Martin v. Dematic, 178 Wn. App. 646, 653, 315 P.3d 1126 (2013), review granted, 180 Wn.2d 1009 (2014). "Because the statute of limitations is an affirmative defense, the burden is on the party asserting it to prove the facts which establish it." Brown v. ProWest Transp. Ltd., 76 Wn. App. 412, 419, 886 P.3d 223 (1994).

The parties agree that RCW 4.16.340(1)(c) is the relevant statute of limitations. Under that provision:

> All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
>      . . .
>      (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought:
>      PROVIDED, That the time limit for commencement of an action under this section is tolled for a child until the child reaches the age of eighteen years.

RCW 4.16.340(1)(c).

This special statute of limitations "is unique in that it does not begin running when the victim discovers an injury. Instead, it specifically focuses on when a victim of sexual abuse discovers the causal link between the abuse and the injury for which the suit is brought." Korst v. McMahon, 136 Wn. App. 202, 208, 148 P.3d 1081 (2006). This is because "the legislature specifically anticipated that victims may know they are suffering emotional harm or damage

4

but not be able to understand the connection between those symptoms and the abuse." Korst, 136 Wn. App. at 208.

Application of the statute allowed the plaintiffs in Korst to go forward, while it precluded the plaintiffs in Carollo v. Dahl, 157 Wn. App. 796, 240 P.3d 1172 (2010). The plaintiffs contend their case is analogous to Korst, while the Department contends it is more like Carollo.

In Korst, the plaintiff sued her parents for damages caused by sexual abuse by her father. The abuse started when she was 8 and continued until she was 14 years old. In 1995, Korst wrote her father a letter acknowledging his mistreatment of her. Korst, 136 Wn. App. at 204. The letter said:

> "Do you know for the victim (me) Its [sic] something that *never* goes away. How do you feel about that Dad? You have haunted me for 20-22 years. You have never even once said you were sorry. I don't think you are.
> I have tried to forgive you in my heart & mind, but the fact is I can't. Each time something happens it disgusts me in the way you treat people + it brings all the feelings back.
> It's just constant hurts . . . ."

Korst, 136 Wn. App. at 209. Seven years later, in 2002, Korst began receiving counseling for problems she was having with her son. During those sessions, she learned that being abused by her father was probably the cause of her problems. A clinical psychologist diagnosed her with posttraumatic stress disorder due to her father's sexual abuse of her. She filed suit. Korst, 136 Wn. App. at 204-05.

At trial, her parents successfully moved for a directed verdict. The trial court reasoned that the letter Korst wrote to her father in 1995 showed that she must have connected her abuse with her injuries at that time. Korst, 136 Wn.

App. at 205. This court reversed. "The letter simply indicates that she resented her father for sexually abusing her, not that Korst understood the effects of that abuse." Korst, 136 Wn. App. at 209.

In Carollo, the plaintiff was molested as a teenager by a camp counselor. He sought counseling for emotional difficulties in 1988. He was told at that time that his childhood sexual abuse was likely the source of his difficulties. In 1995, he was diagnosed with posttraumatic stress disorder resulting from the molestation. He had depression, flashbacks, and nightmares. In 2008, the plaintiff filed suit after his symptoms became much worse and he was unable to function at his job. The new symptoms included panic disorder, major anxiety, major depressive disorder, and agoraphobia. His counselor related the new symptoms to the childhood sexual abuse.

The trial court dismissed the suit as time barred. This court affirmed, holding that unlike Korst, Carollo was not a case wherein the plaintiff could claim that he had only recently connected his emotional harm to childhood sex abuse. Carollo, 157 Wn. App. at 802-03. "Rather, Carollo is claiming that the severity of his most recent symptoms should entitle him to the more lenient provisions of the discovery of harm provision in the statute." Carollo, 157 Wn. App. at 802.

This case is like Korst, not Carollo. The two plaintiffs here have been dealing with serious symptoms of posttraumatic stress disorder for many years, but they are not trying to avoid the statute of limitations by claiming that their symptoms only recently intensified. They are claiming that until recently, they were not aware that the Department's failure to protect them from being sexually

abused in foster care was a cause of their emotional difficulties. In other words, the issue on appeal is not whether plaintiffs are impermissibly pursuing a cause of action for more severe manifestations of time barred injuries. It is whether, on the record provided, a reasonable jury could only conclude that more than three years before the plaintiffs filed suit, they realized that their injuries were connected to what happened to them in foster care.

There are genuine issues of material fact with respect to the Department's claim that the plaintiffs, more than three years before filing suit, connected their diagnoses of posttraumatic stress disorder to the childhood sex abuse at issue. The Department contends, for example, that the counseling S.B. received while living in the Towns home must have enabled her to realize that the emotional struggles she has had as an adult were caused by childhood sexual abuse. But the record does not describe what type of counseling she received. There is no proof that she was told, or grasped, that being sexually abused was likely to have severe and continuing negative impacts on her development as an adult. And because no one believed that Towns was abusing her, the counseling could not have addressed the specific effect of being the victim of sexual abuse by a person officially appointed to protect her.

The Department relies on a report written by Dr. Jan Loeken, who evaluated S.B. upon her transition into prison. S.B. told Dr. Loeken that she had been sexually abused as a child. The report notes that after S.B. was abused she "trusted no one and consequently did not talk much in therapy." The report

7

does not establish that S.B. understood that she suffered from posttraumatic stress disorder as a result of the abuse.

The Department further contends that S.B. made admissions during her deposition on July 7, 2013, that show she has long been aware that the experience of being sexually abused while in foster care is a cause of her present disorder. S.B. acknowledged being depressed "all of her life" and noted that she understood that her depression is related to "my abuse."

> Q: Okay. Was your depression only related to your friends dying from the '97 accident?
> A: No.
> Q: What—
> A: I've been diagnosed depression all my life.
> Q: Okay. For what?
> A: My abuse.

This passage shows only that at the time of her deposition, S.B. understood the causal connection. Similarly, S.B.'s deposition testimony relating to her past suicide attempts is not sufficient to demonstrate an earlier awareness:

> Q: And I think you already said you've had depression all your life?
> A: Yes.
> . . . .
> Q: I see in your record that you've cut your wrists before?
> A: Yes.
> Q: When did that occur?
> A: When I was—2007, 2008, and then just this last January I slit my wrist.
> Q: And what was the reason for that?
> A: Bringing all this stuff back up.
> Q: Okay. So in 2007 it all came back up again?
> A: No. In 2007 it was just—I just had a low part, was really depressed and everything. This one where I slit that, was just this January.
> Q: Okay.
> A: That's from all this, just . . .
> Q: But when you cut on yourself—

A: Did it before.

Q: —it's a result of your history, sex abuse?

A: Yes.

Contrary to the Department's argument, S.B. did not say in the testimony quoted above that when she decided to cut herself in 2007 and 2008, she knew she was doing it because of her history of sexual abuse in foster care. The testimony proves only that she was aware of the connection at the time of her deposition. It does not establish *when* S.B. understood her previous suicide attempts were caused by her abuse.

The arguments presented by the Department regarding P.L.'s understanding of the cause of his suicide attempts are likewise inadequate to establish a statute of limitations defense on summary judgment. The Department relies on a report authored by its own expert witness, Dr. Russell Vandenbelt. According to the report of an interview with Dr. Vandenbelt in May 2013, P.L. said he understood that being abused in foster care was a causal factor:

> PL stated that the suicide ideation was because of his abuse in foster care, though he did not want to disclose these details to his parents because he had just gone back to live with them.

> PL stated that his next suicide attempt was a "scream for help," when he "swallowed a bottle of codeine." However, he stated that he was hoping to die as a result of this action. He explained that he wanted the "thoughts to go away," specifying that this included his sense of shame and embarrassment. . . .

> PL reported participating in counseling several times since age 18. He recalled attending four sessions in Virginia and that this represented him "reaching out for help because of severe depression." However, PL stated that he did not discuss his experiences in foster care at that time.

Dr. Vandenbelt's report does not establish *when* P.L. obtained this understanding. Therefore it does not preclude the reasonable inference that P.L. had only recently gained insight into the causes of his depression and other symptoms.

Both plaintiffs were examined some years ago by mental health professionals in connection with their applications for social security benefits. As a result of these evaluations, both plaintiffs were determined to be disabled by posttraumatic stress disorder. But as Dr. Wynne explained, these evaluations are not conclusive as to the plaintiffs' knowledge of what caused them to have the disorder:

> None of the previous psychological evaluations were intended to address causation. Rather they address disability. Some of the prior evaluations referenced the PTSD diagnosis for [S.B. and P.L.], but none took the next step of articulating the corresponding *cause* of the symptoms or diagnosis. For example, to the extent the Social Security Administration has determined that both [S.B. and P.L.] have mental disabilities qualifying them for benefits, the underlying evaluations do not also analyze or determine the *cause* of the corresponding mental illness and/or PTSD diagnosis. It is typically the role of the Social Security Administration to determine whether or not someone is disabled versus necessarily exploring the *cause* of the disability.

We conclude that the evidence in the record, taken in the light most favorable to the plaintiffs, is sufficient to let the case go to a jury on the issue of the statute of limitations defense under RCW 4.16.340(1)(c).

The order of summary judgment is reversed.

_Becker, J._

WE CONCUR:

_Verellen, A.C.J._

_Cox, J._