# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| THE DRAGICH LIVING TRUST, Dated October 14, 1997,<br><br>Respondent,<br><br>v.<br><br>STEVE JOE DRAGICH<br><br>Appellant. | No.  47584-7-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. – Steven Joe Dragich appeals the order finalizing the Dragich Living Trust (Trust) and various orders related to the sale of a portion of his Trust assets to satisfy the Trust's judgment against him.  He argues that the trial court erred when it (1) denied his request for a full accounting of the Trust before entering the judgment against him and permitting the Trust to sell a portion of his trust assets to satisfy the judgment, (2) failed to issue the subpoenas duces tecum he requested, (3) invalidated a purported deed transferring property from the Trust to Dragich, and (4) allowed a sale of a portion of Dragich's Trust assets in excess of the judgment against him.[1] The record is inadequate to allow review of the first two issues and the last two issues have no merit.  Accordingly, we affirm the trial court's order finalizing the Trust.  We also grant the Trust's request for attorney fees.

---

[1] Dragich also requests "a change of venue" should we remand this matter back to the trial court. Br. of Appellant at 6.  Because we do not remand this matter, this request is moot.

FACTS

I. JUDGMENT

On January 28, 2013, the Trust moved for a judgment against Dragich, alleging that he had misappropriated Trust assets. On September 20, the trial court entered a judgment and order finding that Dragich had misappropriated $168,068.44 from the Trust.

The trial court awarded the Trust a principle judgment of $168,068.44, plus $33,674.11 in prejudgment interest, attorney fees, and costs. The trial court further ordered that if Dragich did not pay the full amount of the judgment within 30 days, the Trust could move for permission to sell Trust assets designated by the Trust as part of Dragich's distributive share to satisfy the judgment. There is nothing in the record before us regarding whether Dragich requested an accounting or any subpoenas before the trial court entered the September 20 order and judgment.

II. MOTION TO SELL TRUST ASSETS

Two months later, the Trust moved for permission to sell a portion of Dragich's Trust assets to satisfy the judgment. The trial court initially issued an order authorizing the Trust to evaluate the Trust assets to determine what portion of the trees on Dragich's portion of the real property would need to be cut and sold to satisfy the judgment. A short time later, the Trust again moved for permission to sell the Trust assets. A timber appraisal was attached to this motion, but there is nothing in the appellate record relating to what portion of these assets the Trust proposed to sell or what portion of these assets the trial court approved for sale.

Dragich opposed the Trust's motion for permission to sell trust assets. He argued that the Trust (1) had not accounted for or distributed to him certain "liquid assets" and certain real property

in Colorado,[2] and (2) had interfered with his attempt to obtain a permit to log certain property for which he had a "Trustee's Deed" issued to him, depriving him of the profits from that sale.[3]  CP at 5-6.  He asserted that the trial court should not allow the Trust to sell the assets to satisfy the September 20, 2013 judgment because the Trust's "gains" from interfering with his logging contract exceeded the amount of the judgment.

Another trust beneficiary filed a declaration responding to Dragich's objection.  This declaration stated that there had been a prior accounting of the Trust at an earlier trial and that the money Dragich claimed was not accounted for included, at least in part, money he wrongfully took from the trust.  The declarant also asserted that the deed Dragich claimed transferred the Trust property to him had never been delivered to Dragich because he had continued to attempt to act as trustee even though he was no longer the trustee and the Trust had discovered that Dragich had misappropriated funds.

On February 10, 2014, the trial court granted the Trust's motion for authority to sell assets to satisfy the September 20, 2013 judgment.  Specifically, the trial court granted permission to the Trust to sell trees growing on the real property that was part of Dragich's share of the trust.  The February 10 order further provided: "The [Trust] shall only log so much of the property from Steve

---

[2] To support this claim, Dragich attached bank account statements from January 2012 and December 2010, and a 2011 property tax notice from Colorado.

[3] To support this claim, Dragich attached a copy of a 2011 forest practices permit allowing him to log certain property, a copy of a Department of Natural Resources stop work order prohibiting the planned logging activities because the forest practices application had been submitted under "the wrong landowner's name" since the Trust still owned the property, a copy of a 2011 logging contract, and a "Trustee's Deed" signed by a trustee conveying the property in question to Dragich. CP at 16, 18.

Joe Dragich's share as may be reasonably necessary to satisfy the Judgment and amount ordered herein, plus interest, plus anticipated future accruals." CP at 20. Additionally, the trial court ordered that any excess funds generated by the sale were to be paid to Dragich within 90 days of completion of the logging project and that the Trust was to provide Dragich with a full accounting of the logging proceeds, less deductions and costs, within 90 days of completion of the logging project. The court retained jurisdiction to review "compliance issues." CP at 21.

### III. MOTION TO RESTRAIN AND MOTIONS TO ISSUE SUBPOENAS DUCES TECUM

Four months later, Dragich moved to restrain the Trust from logging the property. He argued that he had a valid deed to the property the Trust was attempting to harvest.[4] In written findings of fact and conclusions of law, the trial court found that the deed had not been delivered to Dragich and that the deed Dragich had signed and recorded was an invalid copy of the original deed.[5] The trial court issued an order declaring that the deed Dragich had recorded in 2012 was "invalid, void[,] and of no effect," and that title remained in the Trust. CP at 292.

On November 12, 2014, the trial court issued an order requiring the accountings by December 12. Any objections were due by December 22.

On November 26 Dragich moved for the issuance of subpoenas duces tecum asking for production of documents from two timber and logging companies and the Trust. The trial court apparently struck these motions for lack of notice and improper service.

---

[4] It appears that Dragich also attempted to block access to the property.

[5] We describe the relevant findings and conclusions of law in more detail below.

IV. MOTION TO FINALIZE TRUST

On February 19, 2015, the Trust moved to finalize the trust. The Trust also moved to resolve issues related to the invalid deed and for an order approving the Trust's accounting. Dragich objected to the motion to finalize the trust. He (1) appeared to dispute the method of delivery of a check from the Trust for the excess logging proceeds, (2) alleged that a request for a new deed to be issued was improper because his earlier deed was valid and the Trust was withholding "[t]he original true and proper documents" that were in their possession, (3) asserted that he had repeatedly asked for a full trust accounting in previous pleadings but the court had ignored these requests, and (4) requested a full accounting of the trust. CP at 33-37.

On February 26, the trial court held a hearing on the motion to finalize the trust. During this hearing, the trial court apparently stated that a new deed would have to be recorded to transfer the property to Dragich and that the court had the authority to appoint someone to sign this deed if Dragich refused to sign. Dragich continued to assert that his deed was valid. The trial court reiterated that it had previously invalidated the deed Dragich had produced. When Dragich requested that the "original" deed[6] be given to him, the trial court denied this request and ordered that the previous deed be destroyed and a new one be provided. CP at 41. In addition, the parties addressed payment to Dragich for the excess logging proceeds. Dragich accepted a check in payment for the excess proceeds in court.

---

[6] The trial court also refused to revisit whether the signatures on the earlier deed were valid.

Following this hearing, Dragich apparently renewed his request for the issuance of subpoenas duces tecum to the timber and logging companies and to the Trust. Dragich asked that these documents be produced to him and not that the subpoenaed parties produce the documents in court. On March 26, 2015, another judge denied Dragich's requests, noting on one proposed subpoena that the "[r]ule does not provide for production to private parties." CP at 43.

On March 27, Dragich filed an objection to an accounting. He argued that the accountings the Trust had provided were inadequate and did not comply with what was required under the trust documents, and he requested that the trial court order the Trust "to provide ALL trust and trust related information, records, and documents" so he could "have a full accounting performed," CP at 46. He also requested production of the earlier deed documents and once again asserted that the deed he had filed was valid.

The trial court held a hearing on April 3, 2015. Dragich apparently again objected to signing the new deed and related documents. The court and the parties also discussed issues with the accounting and the production of accounting related documents; but the record before us is too vague to discern exactly what was discussed. Over Dragich's objection, the trial court issued an order finalizing the trust. The order also approved the Trust's final "accounting" "with adjustment," and noted that if Dragich refused to sign documents needed to record the new deed such documents would be filed and recorded "under protest." CP at 325.

Dragich appealed. Dragich notified this court that he did not intend to file any verbatim reports of proceedings and that he would, instead, rely entirely on the clerk's papers to support his arguments.

ANALYSIS

I. INADEQUATE RECORD

Dragich argues that the trial court erred when it refused (1) his request for a full accounting of the trust before entering the order authorizing the sale of his trust assets and (2) to issue the subpoenas duces tecum he requested. The record is inadequate to allow us to address these issues.

On appeal, "[t]he appellant bears the burden of providing an adequate record for our review. If the appellant fails to meet this burden, the trial court[']s decision stands." *State v. Tracy*, 128 Wn. App. 388, 394-95, 115 P.3d 381 (2005) (citing *Story v. Shelter Bay Co.*, 52 Wn. App. 334, 345, 760 P.2d 368 (1988)), *aff'd*, 158 Wn.2d 683 (2006). As noted above, Dragich chose not to file any verbatim reports of proceedings in this appeal.

As to Dragich's request for an accounting before considering whether to sell his trust assets, there is nothing in the limited record before us establishing that Dragich requested a full accounting before the trial court considered the sale of his trust assets.[7] Because the record does not support this argument, Dragich is not entitled to relief on this ground.

---

[7] To the extent Dragich may also be arguing he never received an accounting at any time, the record suggests otherwise. The trial court's minutes show that at the April 3, 2015 hearing, the Trust's counsel stated that Dragich had received the final accounting documents that March, and Dragich acknowledged having received these documents.

As to the subpoenas duces tecum issue, Dragich filed two motions asking the trial court to issue subpoenas duces tecum to the Trust and the two timber and logging companies. The trial court struck the first motion for lack of notice and improper service, and another judge denied the second request after determining that the rule did not allow for such requests by private parties.

The record contains limited information about the first motion. It contains only Dragich's motion asking the trial court to issue the subpoenas and an entry in the court's docket. This record does not allow us to determine whether the trial court's denial of the first motion for subpoenas was proper, and we decline to further address this issue.

The record contains even less information about the second motion for subpoenas. The only documents relevant to this request are the proposed subpoenas that Dragich filed and some references in the trial court's minutes. The proposed subpoenas contain notations on them stating that they were "denied." CP at 43-45. One of these documents also contains an additional notation stating, "Rule does not provide for production to private parties." CP at 43. But there is no record explaining what information was before the judge who denied the motion. Accordingly, this record is inadequate to allow review, and we do not address this issue further.

## II. INVALID DEED

Dragich next argues that the trial court erred by declaring his real property deed invalid. Dragich does not challenge any specific finding of fact or conclusion of law related to this issue. Instead, he simply asserts that the deed was prepared and conveyed to him by the trust officers and attorney and that it "was signed, and accepted by [him] for recording." Br. of Appellant at 5.

8

We review a trial court's challenged findings of fact to determine if they are supported by substantial evidence. *Korst v. McMahon*, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006). Unchallenged findings of fact are verities on appeal. *Seven Sales LLC v. Otterbein*, 189 Wn. App. 204, 208, 356 P.3d 248 (2015). We review the conclusions of law de novo to determine whether they are supported by the trial court's findings of fact. *Korst*, 136 Wn. App. at 206.

Although the report of proceedings from the hearing is not part of the appellate record, the record does contain the trial court's written findings of fact and conclusions of law on this issue. Because Dragich does not challenge any findings of fact, we can address this issue on the merits because it requires that we examine only the unchallenged findings of fact.

In its written findings,[8] the trial court found that that although the Trust's agents had signed the original deed and their attorney had acknowledged these signatures, (1) the Trust and its agents and attorney "have maintained continuous and uninterrupted possession of the original Deed[ ]," (2) the delivery of the deed was conditioned upon Dragich signing excise tax affidavits and accounting for the funds he had taken from the Trust, which Dragich failed to do, and (3) the Trust's counsel never physically delivered the original deed to Dragich. CP at 283-86. Lacking the original deed, Dragich obtained a copy of the original deed from another attorney (who did not have the authority to deliver the deed to Dragich), altered language in the accompanying tax

---

[8] These written findings include a finding stating that "[t]he Findings of Fact entered by this Court on July 9, 2014 in this cause are hereby incorporated herein by this reference." CP at 283. It is not clear what this finding means. The written findings themselves were filed July 9, 2014, and are the only written findings in our record, so we cannot tell if there were other written findings the court was attempting to incorporate by reference. If this finding is a reference to the trial court's oral ruling, we do not have the verbatim report of proceedings, so we cannot consider any oral findings.

9

affidavit to prevent the Trust's counsel from discovering that the copy of the deed had been filed, and filed the altered deed. The trial court concluded that Dragich "recorded [the altered copy of the deed] intentionally, wrongfully and maliciously with knowledge that he could not properly take title thereby" and that the filed deed was "a nullity and does not effectively convey title." CP at 287.

Deeds must be delivered to effectively pass title. *Bank of Pullman v. Shurtleff*, 93 Wn. App. 282, 287, 968 P.2d 904 (1998). But the delivery requirement has evolved into a determination of the intention of the granter based on the facts and circumstances of the transaction. *Bank of Pullman*, 93 Wn. App. at 287. Although Dragich contends that the deed was delivered to him, the trial court's unchallenged findings of fact support its conclusion that the granter did not intend to transfer the deed to Dragich unless he met certain conditions (Dragich signing excise tax forms and accounting for the funds he had taken from the Trust) and that Dragich did not meet these conditions. This finding of fact supports the trial court's conclusion that there was no delivery. Accordingly, this argument fails.

### III. EXCESS PROFITS

Dragich further argues that the trial court erred by allowing the Trust to sell more assets than necessary to settle the judgment against him despite the language in the trial court's order limiting the timber sale to that necessary to settle the judgment. He appears to request a judgment in the amount of the excess profits to compensate him for this additional "loss." Br. of Appellant at 5-6.

To the extent Dragich is arguing that the trial court erred by allowing the Trust to log more property than necessary to satisfy the judgment, the record does not contain any information about the specific logging activities the trial court approved or whether the trial court was ever advised that the logging was excessive. Thus, to the extent Dragich is arguing that the trial court was somehow responsible for the excess logging, we cannot address that issue based on this record.

To the extent Dragich is asserting that he is entitled to any profits in excess of the judgment against him, he is correct. The February 10, 2014 order clearly provided that he was entitled to any excess profits. And the record also shows that Dragich accepted payment for the excess logging proceeds in court during the February 26, 2015 hearing. Accordingly, this issue has no merit.

## IV. ATTORNEY FEES ON APPEAL

Finally, the Trust requests attorney fees under RCW 11.96A.150(1), RAP 18.1(b), and RAP 18.9. Under RCW 11.96A.150(1), we have the discretionary authority to award reasonable attorney fees "to any party: (a) [f]rom any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings." The Trust properly requested attorney fees in accordance with RAP 18.1(b). We grant the Trust's request for fees pursuant to RCW 11.96A.150(1) and order that the fees be paid by Dragich.

No. 47584-7-II

We affirm the trial court and grant the Trust's request for reasonable attorney fees under RCW 11.96A.150(1) and RAP 18.1(b).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, P.J.

MELNICK, J.