# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KC and LM, | No. 48029-8-II |
| Respondents, | |
| v. | UNPUBLISHED OPINION |
| DONNA JOHNSON, GOOD SAMARITAN HOSPITAL, PATRICK SHEEHY PhD, and LINDA WILLIAMS, M.S.W., | |
| Petitioners, | |
| STATE OF WASHINGTON and DEPARTMENT OF SOCIAL & HEALTH SERVICES, | |
| Defendants. | |

BJORGEN, C.J. — KC and LM brought a negligence action against the Department of

Social and Health Services (DSHS), Good Samaritan Hospital, Patrick Sheehy, Ph.D., and Linda

Williams, M.S.W. (GSH), for allegedly failing to prevent KC's and LM's sexual abuse at the

hands of their stepfather. On discretionary review, GSH challenges three summary judgment

rulings by the trial court, arguing that (1) the trial court improperly denied summary judgment

dismissing KC's claim on collateral estoppel grounds, (2) the trial court improperly denied

summary judgment dismissing LM's claim on statute of limitations grounds, and (3) the trial

court improperly granted KC's and LM's motion for summary judgment striking GSH's statute of limitations affirmative defense.

We hold that (1) the trial court properly decided that KC's claims were not collaterally estopped by a prior decision on the statute of limitations applicable to those claims, (2) the trial court properly denied summary judgment requesting dismissal of LM's claim under the statute of limitations because there are genuine disputes of material fact, and (3) the trial court improperly granted summary judgment striking GSH's statute of limitations affirmative defense because there are genuine disputes of material fact. Accordingly, we affirm the trial court in part, reverse in part, and remand for further proceedings consistent with this opinion.

FACTS

In 2012, KC began reviewing court records to determine if her mother, Donna Johnson, was eligible for certain benefits on account of her mother's marriage to her ex-husband, Carl Walter Johnson.[1] While reviewing those records, KC learned that Johnson had been permitted to live with Donna and her then young children, including KC and her sister LM, even though he had been convicted of molesting his own daughters. It was in the period after Johnson moved in that he sexually abused KC and LM. KC told her sister LM about the records she discovered, and on April 23, 2013, KC and LM filed a complaint against the State of Washington and DSHS, alleging negligent screening, investigation, and monitoring of Johnson.

A.      Facts Pertaining to Johnson

In 1980, Johnson pled guilty to indecent liberties stemming from different incidents of sexual contact with his biological daughters and received a deferred five year sentence on the

---

[1] Because Donna Johnson and Carl Johnson have the same last names, we refer to Donna by her first name; we refer to Carl as Johnson. No disrespect intended.

condition that he comply with probation requirements. In 1981, Johnson's probation officer wrote a memo to the trial court, requesting advice regarding whether to permit Johnson to move into Donna's home. The memo noted that Johnson's treatment provider determined that he could safely move into Donna's home if he continued to comply with his treatment schedule, but also expressed concern based on information from Johnson's prior treatment provider, Dr. H.R. Nichols, who identified problems with his treatment progression. Although the record does not contain the court's response to the probation officer's questions, the record does indicate that Donna and Johnson were married on November 23, 1981, and that he was permitted to move into Donna's residence sometime in 1981 or 1982.

B.      Facts Pertaining to Abuse of KC and LM

KC and LM were both sexually abused by Johnson after he moved into Donna's residence. He would molest the girls while they were alone or at night and eventually involved one of KC and LM's brothers in the abuse. Both girls recall the abuse beginning when each was about 4 years old. In the period the abuse was occurring, KC attempted to harm herself, and both girls' academic performance declined. By age 12, LM became sexually active with older partners and became pregnant by age 15 by her boyfriend. KC and LM's biological father was investigated on suspicion of molesting the girls and he grew resentful toward them as a result of the accusations, leading to a deterioration of their relationship.

Both KC and LM attempted to disclose the abuse at different times but were not believed. Even after KC disclosed the abuse in November 1990 and child protective services (CPS) investigated, the abuse continued. Although Donna eventually forced Johnson to leave the family home, he continued to abuse LM when he drove her to medical appointments. Johnson died of a heart attack when LM was 15 and KC was 13, just after LM had run away from home.

C.      DSHS Trial

In this proceeding, held before the Honorable Katherine Stolz, DSHS filed a summary

judgment motion requesting that KC's complaint be dismissed under the statute of limitations,

RCW 4.16.340(1)(c), because KC stated in her deposition that she had been experiencing

emotional symptoms as a consequence of her sexual abuse for her entire adult life.  RCW

4.16.340(1)(c) states:

> (1) All claims or causes of action based on intentional conduct brought by any
> person for recovery of damages for injury suffered as a result of childhood sexual
> abuse shall be commenced within the later of the following periods:
> . . . .
> (c) Within three years of the time the victim discover[s] that the act caused the
> injury for which the claim is brought.

DSHS also identified KC's "trouble coping with every-day life, suicial attempts in her early

years, ongoing suicidal thoughts throughout her adult life, and depression and anxiety as part of

her PTSD [Post Traumatic Stress Disorder] diagnosis" as evidence that KC had correlated her

injuries to her childhood sexual abuse more than three years before filing her negligence suit.

Clerk's Papers (CP) at 32.  KC responded that none of the evidence offered by DSHS

demonstrated that she had connected her symptoms with childhood sexual abuse.

After hearing argument, the trial court granted summary judgment to DSHS, explaining:

> [Court]:       I'll grant the summary judgment motion, you know.  The
> bottom line is that it was very – a lot of this is predicated on some sort of, you know,
> speculation as to what somebody should have, could have, or would have done; and
> we are also talking [sic] a climate regarding sex abuse that is, you know, over 30
> years ago, you know, in some of these references; and you know, things were a lot
> different then than they are now.  I mean, you can't go and retroactively apply the
> standards of what they do today to what they did 30-odd years ago; so you know,
> at this point, given the fact that we – you know, there's a good reason why things
> have statute of limitations is because, you know, records don't exist, memories have
> faded, individuals are dead; so there's really no way to reconstruct what happened
> with anything other than speculation as to what someone could have or should have
> done.  I'll grant the summary judgment motion.
>        . . . .

[Court]: Okay. [Plaintiff's] [c]ounsel, I understand; but, you know, again, this is too old – this case is too old. There's too many gaps, too many people who can't come in to testify as to about what they did or did not do, what they did or did not know.

[P]: But that's not the legal standard.

[Court]: I am finding, Counsel, that, you know, there isn't enough here to give to a jury, so I've granted the summary judgment motion; so let's go ahead and get the order ready to sign.

. . . .

[P]: Your Honor, so I can explain to my clients, the basis of the Court's ruling is to say that we're speculating –

[Court]: That's not the only basis.

[P]: -- and that the case is just really old.

[Court]: It's not the only basis, but, you know, I'm granting the summary judgment motion. It's, you know, been too long. It's outside the statute of limitations for one of them, KC; but the bottom line is: You don't have the individuals who can actually verify the documents; so a lot of this is would be just hearsay, anyway. I mean, unless you can start questioning someone to say this is what we did, this is why we did it, this is what actually happened, you know, you don't have the ability to prove a case because you can't dump a lot of documents on a jury and ask them to reconstruct them.

Verbatim Report of Proceedings (VRP) (Sept. 26, 2014) at 16, 20-22. That same day, the court

entered an order dismissing all of KC's and LM's claims against DSHS with prejudice, and KC

and LM filed a notice of appeal.

On September 30, 2014 KC and LM filed a motion to recuse Judge Stolz based on her

past representation of KC and LM's biological father, Delbert Melby, in a family law dispute

against their mother, Donna. KC and LM also filed a motion for reconsideration of the summary

judgment order on the same day. DSHS responded in part by arguing that the trial court no

longer had jurisdiction over the motions because the case had been appealed. On October 10,

Judge Stolz denied the motion to recuse, and KC and LM amended their complaint to add Donna

as a defendant in the case. On October 13, KC and LM withdrew their appeal of Judge Stolz's

summary judgment ruling.[2]

---

[2] We dismissed the appeal on October 29, and issued the mandate for this case on December 8.

On October 15, KC and LM made a motion to have the presiding judge consider the impartiality of Judge Stolz on reconsideration. On October 17, Judge Stolz transferred the case to another department due to Donna's addition as a defendant, but reaffirmed her order dismissing KC's and LM's claims against DSHS. Judge Stolz's order also noted that KC and LM had agreed to strike their motion to reconsider the summary judgment order dismissing their case. On October 31, Judge van Doorninck denied KC and LM's motion to reconsider Judge Stolz's refusal to recuse herself, and on November 14 Judge Culpepper denied KC and LM's motion to reconsider Judge van Doorninck's ruling on reconsideration.

D.      Good Samaritan Hospital Trial

On November 19, 2014, KC and LM filed their second amended complaint, adding Good Samaritan Hospital, Patrick Sheehy, Ph.D., and Linda Williams, M.S.W. (GSH) as defendants. KC and LM alleged that GSH was negligent in the provision of counseling services. GSH and KC and LM filed summary judgment motions and made oral arguments before Judge Hogan on July 10, 2015.

In its motion for summary judgment, GSH argued that KC's and LM's claims were barred by the statute of limitations and that KC was collaterally estopped from relitigating the issue of whether her claims were barred by the statute of limitations. With respect to KC, GSH made similar arguments to those made by DSHS based on KC's statements that she had been experiencing her symptoms for her entire life. GSH also noted that "[b]ased on the same facts, Judge Stolz previously ruled that KC's claims are barred by the statute of limitations," and argued that KC's claims should be dismissed under the statute of limitations. CP at 1415.

As to LM, GSH argued that, like KC, she had experienced mental health issues for her entire life, and consequently, her claims were barred by the statute of limitations. GSH also

6

argued that LM's claims were barred by the statute of limitations because her medical records showed that she was diagnosed with PTSD in 2010 and that she had already begun making connections between her symptoms and past abuse by July 2011, more than three years prior to adding GSH to the lawsuit in November 2014.

LM responded that the medical records were conjoint marital counseling sessions, rather than "individual psychotherapy" sessions, as claimed by GSH. CP at 1442. While the record reflects that LM attended many sessions with her partner, records from other sessions indicate that LM attended some sessions by herself. LM also contended that the medical reports only reflected the impressions of the counselor, not LM, and therefore the information contained in the medical reports did not correlate to LM's subjective understanding of the connection between her abuse and her symptoms for the purpose of the statute of limitations. GSH responded that it would be "absurd" to suppose that LM's counselor would be able to identify "[symptoms] of sadness, loss, grief, and PTSD due to extensive [history] of childhood abuse," without participation from LM. CP at 1566.[3]

In her oral rulings, Judge Hogan denied GSH's motion to dismiss KC's claim on the grounds of collateral estoppel, reasoning that "[t]here [was] a new record before [the] Court." CP at 1628. The court also denied GSH's summary judgment motion to dismiss KC's and LM's claims on statute of limitations grounds and granted their summary judgment motion to preclude Good Samaritan from arguing a statute of limitations affirmative defense at trial. When asked during argument whether the court knew when KC's and LM's causes of action accrued, Judge Hogan responded, "I don't." CP at 1634.

---

[3] Additionally, some of the relevant medical records contain LM's signature, which could indicate that she examined the documents.

GSH sought discretionary review of the trial court's summary judgment rulings rejecting application of collateral estoppel to KC, denying GSH's motion to dismiss LM's claims as barred under the statute of limitations, and precluding GSH from raising a statute of limitations affirmative defense at trial. Our commissioner granted review.[4]

## ANALYSIS

### I. RCW 4.16.340

RCW 4.16.340 establishes the statute of limitations for claims based on childhood sexual abuse. As set out above, the heart of this statute is a limitations period of three years from the time the victim discovers that the act caused the injury for which the claim is brought. The legislature passed this statute in response to our Supreme Court's decision in *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986). *See,* ENGROSSED SECOND H.B. 2058 Digest. In *Tyson*, the court held that the three year statute of limitations barred the plaintiff's claim, despite the fact that the plaintiff had repressed memories of her sexual assault. *Tyson*, 107 Wn.2d at 75, 79-80. When the legislature amended RCW 4.16.340 in 1991, it commented:

> In addition to the cases in which a victim may suffer injuries, but does not know that the sexual abuse caused the injury due to suppressed memory of the sexual abuse, a victim may remember the sexual abuse but may have a delayed reaction to the abuse. The victim may experience significant suffering from the abuse later in life. A victim may have experienced some trauma from abuse when the abuse occurred but the trauma may not have been severe enough to prompt the victim to sue within three years of the victim's 18th birthday.
>
> . . . .
>
> The Legislature finds that sexual abuse is a *pervasive problem that affects the safety and well-being of many citizens*. Childhood sexual abuse is traumatic and the damage is long-lasting. Victims may not only repress the memory of the abuse for many years, but may also be unable to connect being abused with any injury until

---

[4] Although the commissioner granted review on the issue of whether some or all of KC's and LM's claims were time barred by the statute of limitations, on appeal GSH has limited its argument on this issue to whether LM's claims are time barred.

later in life. Although the victim may be aware of the sexual abuse, more serious reactions to the abuse may develop later.

. . . .

The Legislature also intends that the discovery of minor injuries from sexual abuse does not trigger the statute of limitations for injuries that were not discovered or did not manifest themselves until later years.

ENGROSSED SECOND H.B. 2058 Digest (emphasis added).

Our Supreme Court has clarified that RCW 4.16.340 encompasses negligence claims brought against third parties who allegedly failed to protect children from abuse. In *C.J.C. v. Corporation of Catholic Bishop of Yakima*, the court reasoned that because RCW 4.16.340(1) applied to "'all . . . causes'" or claims that were "'based on intentional conduct,'" the legislature did not intend to limit application of the statute to intentional acts. 138 Wn.2d 699, 709, 985 P.2d 262 (1999) (quoting *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991)). The court explained that "intentional sexual abuse is the predicate conduct upon which all claims are based, including the negligence claims," because "the injury resulting from the abuse 'forms the grounds' for the claims." *Id*. at 709-10.

## II. 2015 SUMMARY JUDGMENT MOTIONS

### A. Standard of Review

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Walston v. Boeing Co.*, 181 Wn.2d 391, 395, 334 P.3d 519 (2014) (citation omitted). Summary judgment is granted only if, given the evidence, reasonable persons could reach only one conclusion. *Walston*, 181 Wn.2d at 395. Our court engages in the same inquiry as the trial court, with questions of law reviewed de novo and the facts and all reasonable inferences from the facts viewed in the light most favorable

9

to the nonmoving party. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 305, 96 P.3d 957 (2004).

B.     <u>Collateral Estoppel as to KC</u>

Collateral estoppel, or issue preclusion, prevents relitigation of an issue in a subsequent proceeding involving the same parties. *Id*. at 306. The collateral estoppel doctrine "promotes judicial economy and serves to prevent inconvenience or harassment of parties," by reducing repetitive litigation and providing for finality as to particular issues. *Id*. (citation omitted). Whether collateral estoppel applies to bar relitigation of an issue is reviewed de novo. *Id*. at 305. A party invoking collateral estoppel must demonstrate that:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Id*. at 307.

GSH asserts that KC is collaterally estopped from relitigating whether her claim is time barred by the statute of limitations based on Judge Stolz's prior ruling that KC's claim was barred by the statute of limitations. KC and LM dispute each factor with regard to this claim of collateral estoppel.

1. Identity of Issue

KC and LM argue that the trial court properly concluded that differences in the evidentiary records before Judge Stolz and Judge Hogan precluded application of collateral estoppel. At oral argument before Judge Hogan, KC claimed that several of KC's specific harms, education impairments, early pregnancy, and substance abuse were "never brought before Judge Stolz." CP at 1616. The record belies KC's and LM's assertions. In making her ruling,

Judge Hogan considered KC's 2015 declaration, which included statements from KC and excerpts from a forensic examiner discussing KC's problems with substance abuse, education, and pregnancy. Judge Stolz considered KC's 2014 declaration in her summary judgment ruling, which is entirely identical to KC's 2015 declaration. Both declarations were signed "this 15th day of September, 2014," are addressed to "HONORABLE KATHERINE M. STOLZ," and in all other respects are the same, aside from the filing date. CP at 442, 1039. Having reviewed KC's 2014 declaration, Judge Stolz would have been aware of KC's problems involving early pregnancy, substance abuse, and education. Therefore, despite KC and LM's argument in briefing that "Judge Hogan's ruling was based upon a different evidentiary record," we find that the issue in this case is identical to the issue litigated before Judge Stolz for the purpose of collateral estoppel. Br. of Resp'ts at 23.

2. Judgment on the Merits

KC and LM maintain that collateral estoppel requires finality and there have never been any final rulings on the pending motions before Judge Stolz. However, GSH seeks application of collateral estoppel only with respect to Judge Stolz's order granting summary judgment. A grant of summary judgment "'constitutes a final judgment on the merits and has the same preclusive effect as a full trial of the issue.'" *Brownfield v. City of Yakima*, 178 Wn. App. 850, 870, 316 P.3d 520 (2014) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Nw. Youth Servs.*, 97 Wn. App. 226, 233, 983 P.2d 1144 (1999)). Furthermore, a judgment becomes final for the purpose of collateral estoppel at the beginning of the appeals process rather than the conclusion. *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 85 Wn. App. 249, 254-55, 931 P.2d 931 (1997) (citations omitted). Therefore, we find that Judge Stolz's summary judgment order was a final judgment on the merits.

3. Identity of Party

KC and LM contend that collateral estoppel is not appropriately applied to KC because "[GSH] and DSHS are different parties, with different legal obligations, and different damages were caused by their differing involvement." Br. of Resp'ts at 23. However, this argument inverts the proper standard, that "the party *against whom* collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding." *Christensen*, 152 Wn.2d at 306 (emphasis added). In this case, GSH argues that collateral estoppel should be applied to KC, who was a party in the summary judgment proceeding before Judge Stolz. Therefore, we find that the identity of the party is identical for the purpose of collateral estoppel.

4. Injustice

KC and LM allege that Judge Stolz's representation of Melby, KC and LM's biological father, in a 1984 family law dispute involving Donna, their mother, creates an appearance of bias that requires us to set aside Judge Stolz's ruling. Application of collateral estoppel does not work an injustice where a party against whom collateral estoppel is asserted "'had an unencumbered, full, and fair opportunity to litigate his claim in a neutral forum.'" *Nielson*, 85 Wn. App. at 255 (quoting *Rains v. State*, 100 Wn.2d 660, 666, 674 P.2d 165 (1983)). In the context of collateral estoppel, "'[i]njustice' means more than that the prior decision was wrong. When faced with a choice between achieving finality and correcting an erroneous result," the court generally opts for finality. *State Farm Mut. Auto. Ins. Co. v. Avery*, 114 Wn. App. 299, 306, 57 P.3d 300 (2002) (citations omitted).[5]

---

[5] At least one court has articulated a four-factor test to determine whether application of collateral estoppel would work an injustice. *Avery*, 114 Wn. App. at 306. Those factors are: (1) the character of the court issuing the judgment; (2) the scope of the original court's jurisdiction; (3) procedural informality; and (4) procedural safeguards, including appeal. *Id*. at 306-09. Because neither party has briefed or argued these factors, or otherwise argued that the underlying

Under the appearance of fairness doctrine, a judge must recuse herself "if [she] is biased against a party or [her] impartiality may reasonably be questioned." *State v. Dominguez*, 81 Wn. App. 325, 328, 914 P.2d 141 (1996). However, a party claiming bias must produce "[e]vidence of a judge's actual or potential bias . . . before the appearance of fairness doctrine will be applied." *Id.* at 328-29. A judge's prior representation of a party in an unrelated matter does not necessarily raise the specter of potential bias. *Id.* at 329. In *Dominguez*, the trial court judge had previously both prosecuted and defended the defendant in unrelated criminal matters. *Id.* The court held that "the mere fact that the judge earlier acted once for [the defendant] and once against him, both times in his professional capacity as an attorney, does not establish potential bias." *Id.* In this instance, Judge Stolz's alleged bias is more attenuated than the claimed bias of the trial judge in *Dominguez*, because Judge Stolz's former client is not a party to the current dispute. Therefore, application of collateral estoppel would not result in an injustice on this basis.

However, the injustice prong of the collateral estoppel analysis also contemplates whether application of the doctrine would contravene public policy. In *Christiansen*, our Supreme Court noted that "the injustice factor [of collateral estoppel] 'recognizes the significant role of public policy.'" 152 Wn.2d at 309 (quoting *State v. Vazquez*, 148 Wn.2d 303, 309, 59 P.3d 648 (2002)). Examining the case of *State v. Dupard*, 93 Wn.2d 268, 609 P.2d 961 (1980), the court in *Christiansen* explained:

proceeding contained procedural or jurisdictional defects, we decline to address these factors specifically.

13

> In *Dupard*, the issue was whether collateral estoppel would be applied in a criminal prosecution where the charges were based on conduct that had been the subject of a parole revocation decision by the Board of Prison Terms and Paroles. The court concluded that the legislature contemplated that new crimes would be processed initially in the criminal justice system and not in a parole revocation hearing. The court specifically noted that RCW 9.95.120 provided a parole hearing within 30 days for violations *other than* felonies or misdemeanors.

*Christiansen*, 152 Wn.2d at 309. The court concluded that "[t]his indicator of legislative intent weighed against application of collateral estoppel," and that "[i]f a legislative body indicates its intent on the matter of preclusion, that intent generally controls whether the judicially applied doctrine of collateral estoppel will apply." *Id*. at 309, 314. However, the court also noted that "simply because a subject implicates public policy does not mean that application of collateral estoppel *contravenes* public policy," and that the analysis is still concerned primarily with procedural fairness. *Id*. at 315-16.

In this instance, KC and LM have made essentially identical claims against GSH, and GSH has asserted the same affirmative defense against both KC and LM. The statute of limitations issue for both KC and LM revolves around when each discovered or should have discovered that her harm was caused by the abuse. RCW 4.16.340. With such profound similarities, application of collateral estoppel to bar KC's claim on statute of limitations grounds while LM's nearly identical claim proceeds under the same statute of limitations would result in injustice; it would contravene the legislative intent to afford child victims of sexual assault meaningful relief notwithstanding the general three year statute of limitations. ENGROSSED SECOND H.B. 2058 Digest. Statute of limitations "are procedural rules that are properly the

realm of the Legislature." *Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 330-31, 815 P.2d 781 (1991); *Hutton v. State*, 25 Wn.2d 402, 405, 171 P.2d 248 (1946).[6]

Given the unique circumstances of this case and the legislative intent embodied in RCW 4.16.340(1)(c), we hold that application of collateral estoppel to KC would contravene public policy, and thereby result in injustice. As such, we affirm the grant of summary judgment dismissing GSH's collateral estoppel argument as applied to KC.

C.     Statute of Limitations as to LM

GSH argues that based on the medical records they submitted, no reasonable jury could conclude that LM's claim is not time barred.

RCW 4.16.340(1)(c) provides that a childhood sexual assault victim's three year statute of limitations is tolled until "the victim discovered that the act caused the injury for which the claim is brought." We have previously acknowledged that this statutory tolling provision "'is unique . . . it specifically focuses on when a victim of sexual abuse discovers the causal link between the abuse and the injury for which the suit is brought.'" *B.R. v. Horsley*, 186 Wn. App. 294, 299, 345 P.3d 836 (2015) (quoting *Korst v. McMahon*, 136 Wn. App. 202, 208, 148 P.3d 1081 (2006)). The statute of limitations does not begin when a victim identifies an injury, but rather when a victim associates an injury with prior abuse. *Id.* at 300 (citations omitted). Therefore, LM's claim is timely if she correlated her harms to her abuse less than three years before filing her claim. *Id.* at 299-300.

---

[6] However, at least one case has characterized a statute of limitations as "both substantive and procedural." *Stikes Woods Neigh. Ass'n v. City of Lacey*, 124 Wn.2d 459, 466, 880 P.2d 25 (1994).

While GSH has produced medical records suggesting that LM could have associated her harms with her abuse more than three years before she filed her claim, all reasonable inferences must be resolved in favor of the nonmoving party on summary judgment. *Christensen*, 152 Wn.2d at 305. More specifically, *Korst*, 136 Wn. App. 202, illustrates well, although obliquely, the demanding showing under this standard needed to sustain summary judgment against a plaintiff based on this statute of limitations. In *Korst*, the trial court granted defendants' motion for a directed verdict and dismissed the plaintiff's claim as time barred based in part on a letter that the plaintiff wrote to her abuser. *Korst*, 136 Wn. App. at 204-05. The plaintiff's letter expressed anger and frustration at her assailant for sexually abusing her and lamented the pain that the experience caused. *Id*. at 209. We reversed the trial court, reasoning that the plaintiff's letter "merely states that the original pain . . . has not gone away, but it does not prove that [the plaintiff] knew her father's sexual abuse had caused her more serious physical and emotional symptoms." *Id*. at 210.

Viewing all the evidence in favor of LM, a jury could reasonably conclude that LM associated her harms with her abuse less than three years before filing her complaint. Although GSH provided records pertaining to LM that mention childhood abuse, these records do not conclusively establish that LM connected her abuse to her harms. Similarly, LM's statement that "[this abuse] has affected my life for as long as I can remember," is similar to the plaintiff's expression of pain in *Korst*.[7] CP at 1366. As such "a jury must resolve the factual issues and determine whether the statute of limitations bars her claim." *B.R.*, 186 Wn. App. at 306

---

[7] "I was just a kid, what 13-14 when I was raped by Dad. Do you know for the victim (me) Its [sic] something that *never* goes away. . . . It's just constant hurts." *Korst*, 136 Wn. App. at 209 (alteration in original).

16

(citations omitted). For these reasons, we affirm the trial court order denying GSH's summary judgment as to LM.

D.      Statute of Limitations Affirmative Defense

GSH argues that the trial court erred in granting KC and LM's summary judgment motion precluding GSH's statute of limitations affirmative defense. As discussed in the preceding section, the determination of when a victim associated a particular harm with earlier abuse is a question of fact for the jury. *B.R.*, 186 Wn. App. at 306 (citations omitted). At the July 10, 2015 summary judgment hearing, both parties disputed when KC and LM associated their harms with their abuse, and Judge Hogan stated that she did not know when their claims accrued. Precluding GSH from arguing a statute of limitations affirmative defense would effectively remove the determination of a question of fact from the jury: the question of when KC and LM discovered that the abuse caused the harm. Given the conflicting evidence on this issue and Judge Hogan's admitted uncertainty as to when the claims accrued, we reverse the grant of summary judgment striking GSH's statute of limitations affirmative defense.

CONCLUSION

We affirm the trial court's denial of the summary judgment motion requesting dismissal of KC's claims as collaterally estopped. We also affirm the trial court's denial of the summary judgment motion requesting dismissal of LM's[8] claims under the statute of limitations, and we reverse the trial court's summary judgment ruling precluding GSH's statute of limitations

---

[8] As noted, GSH does not argue on appeal that KC's claims are barred under the statute of limitations.

affirmative defense. Finally, we remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
BJORGEN, C.J.

We concur:

_____
WORSWICK, J.

_____
MELNICK, J.