# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| BRUCE WOLF, as Personal Representative of the Estate of TIMOTHY JONES, Deceased, | No.  55964-1-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, | PUBLISHED OPINION |
| Respondent. | |

LEE, J. — Timothy Jones' estate (the Estate) appeals the summary judgment dismissal of its claims against the State of Washington.  The Estate argues that the superior court erred because (1) a claim against a negligent party does not begin to run under RCW 4.16.340(1)(c), the statute applicable to childhood sexual abuse crimes, until the victim makes a causal connection between the negligent party's alleged failure to prevent the harm and the victim's injuries, and (2) the superior court improperly imposed the burden of proof relevant to the affirmative defense of the statute of limitations on the Estate.

We affirm.

No. 55964-1-II

FACTS

A.    DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES INVOLVEMENT

Jacqueline Jones gave birth to Timothy[1] on July 20, 1990.  In September 2002, the Department of Children, Youth, and Families (DCYF) received reports that Timothy was neglected at home.  Jacqueline subsequently lost her home to foreclosure, and Timothy moved in with a family friend, Price Nick Miller Jr., while Jacqueline sought a new home.

In June 2003, DCYF received a report that Miller paid excessive attention to children who were not his own.  DCYF removed Timothy from Miller's home due to Miller's inappropriate behavior.  Later that year, Jacqueline secured housing, and Timothy returned to her care.

In November 2003, law enforcement removed Timothy from Jacqueline's care due to suspected neglect and placed him in foster care.  The State filed a petition in Pierce County Superior Court alleging Timothy was a dependent child.  In February 2006, the dependency case was dismissed, and Timothy again returned to Jacqueline's home.

B.    CRIMINAL CHARGES AND JUDGMENT AGAINST MILLER

In May 2006, Timothy, then age 15, told his support counselor, Wende Wertley, that from 1998 to 2006, Miller regularly sexually, physically, and emotionally abused him.  In July 2006, Miller was arrested and charged in Pierce County Superior Court for his abuse of Timothy.

In March 2008, Miller pleaded guilty to one count of second degree rape of a child for his abuse of Timothy and to one count of second degree child molestation for his abuse of another child.  On August 25, 2008, the superior court sentenced Miller to 119 months to life in prison.

---

[1] We refer to members of the Jones family by their first name due to their shared last name.  No disrespect is intended.

No. 55964-1-II

C.    TIMOTHY'S LAWSUIT AGAINST MILLER FOR INJURIES RESULTING FROM ABUSE

In 2007 or 2008, Timothy, through Jacqueline, brought suit against Miller for damages resulting from Miller's abuse. Timothy's attorney never advised Timothy or Jacqueline that Timothy may have a lawsuit against the State.[2]

On June 2, 2018, Timothy committed suicide.

D.    MARCH 2020 LAWSUIT

1.    Estate's Allegations And Motion For Partial Summary Judgment

On March 12, 2020, the Estate filed this lawsuit for negligence, negligent investigation, and wrongful death under RCW 4.20.010, .020, and .060.[3] In the complaint, the Estate outlined facts pertaining to contact between Miller and Timothy while Timothy was in foster care.

The complaint stated that in December 2003, "Timothy's social worker learned from his counselor Kathy Hagen that Miller had visited Timothy at his foster home, although the foster parents had been instructed that no one was to have contact with Timothy." Clerk's Papers (CP) at 232. After this incident, the social worker placed Timothy in a new foster home. That same month, the new foster parent informed Hagen that Miller had visited his home. Hagen noted that twice in January 2004, Miller was present for a supervised visit between Timothy and Jacqueline. At the end of January 2004, discussions occurred at DCYF relevant to Miller, specifically that he appeared to be stalking Timothy. Based on these facts, the Estate contended that the State breached

---

[2] No other evidence regarding this lawsuit against Miller, such as the allegations, filing date, or evidence, is contained in the record on review.

[3] Jacqueline was the appointed personal representative of Timothy's estate at the time the Estate filed the lawsuit. Bruce Wolf was later appointed successor personal representative. An amended complaint substituting Wolf for Jacqueline was later filed.

3

No. 55964-1-II

a duty to Timothy to prevent "foreseeable intentional acts of third parties." CP at 233. The complaint also alleged that "DCYF gathered incomplete or biased information in investigating potential placements of Timothy." CP at 234. Finally, the complaint alleged that Timothy's death in 2018 resulted from "the wrongful act, neglect, or default of the State." CP at 234. Among other damages, the Estate requested "general damages for Timothy's pain and suffering, anxiety, emotional distress, humiliation, disability and all other general damages suffered by him." CP at 235.

In its answer to the Estate, the State asserted, among other things, that the Estate's claims were barred by the statute of limitations, an affirmative defense.

The Estate filed a motion for partial summary judgment on the State's statute of limitations affirmative defense. The Estate argued that its negligence claim, which was based on Miller's childhood sexual abuse of Timothy, was subject to the special statute of limitations outlined in RCW 4.16.340(1)(c). Under this statute, an abuse victim may bring a lawsuit three years after "discover[ing] that the act caused the injury for which the claim is brought." RCW 4.16.340(1)(c). The Estate contended that no evidence existed to show that Timothy actually discovered the causal connection between the State's negligent acts and his own injuries.

The Estate relied on the sworn declarations from three people who had a close relationship with Timothy, including Jacqueline; Jimmy Acevedo, Timothy's partner; and Seth Jones, Timothy's half-brother, to show that Timothy never believed the State was liable for his claims until 2017. Jacqueline declared that she had never heard Timothy express anger toward the State nor did he ever indicate that "he believed he might have a legal claim against the State of Washington related to the abuse he suffered." CP at 44.

4

No. 55964-1-II

Acevedo was Timothy's partner from 2012 to Timothy's death in 2018. Acevedo declared that in mid-to-late 2017, Timothy saw a story in the news about childhood sexual abuse. Acevedo and Timothy discussed whether Timothy might have a claim against the State for the abuse inflicted by Miller. Acevedo suggested that Timothy speak with a lawyer. Shortly after this discussion, Timothy contacted the Law Offices of Ressler and Tesh. Timothy later told Acevedo that the firm was investigating whether he had a claim against the State. Acevedo believed that this investigation was underway at the time Timothy died. According to Acevedo, before 2017, Timothy never told him that he believed the State had any liability as a result of Miller's abuse.

Seth declared that he was aware of the abuse that Timothy suffered. He and Timothy, however, never discussed the abuse. Seth never heard Timothy express anger toward the State or indicate that "he believed he might have a legal claim against the State of Washington related to the abuse he suffered." CP at 48.

2.	State's Cross Motion For Summary Judgment

In response to the Estate's partial summary judgment motion, the State filed a cross-motion for summary judgment. The State argued that "the plaintiff bears the burden of proof of showing their claim was filed timely, especially in a situation that would require the subjective knowledge of a decedent." CP at 58. The State contended that the Estate failed to produce any evidence to show that Timothy did not recognize a connection between Miller's abuse and the damages sought. The State argued that it could not be expected to prove a negative. In support of its cross-motion, the State pointed to the 2006 disclosure of Timothy in which he informed law enforcement that Miller abused him.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55964-1-II

In opposition to the State's cross-motion, the Estate filed the declaration of Dr. Gilbert Kliman, the founder and medical director of The Foster Care Study Unit of the Department of Child Psychiatry at the Columbia University College of Physicians and Surgeons. Dr. Kliman gave "an expert psychiatric opinion" about whether Timothy "had comprehension of facts which would lead to his making a legal complaint that the State of Washington had negligently contributed to his psychological damages." CP at 111. After reviewing documents provided by the Estate, including documents from DCYF files, Dr. Kliman opined that Timothy "could not be reasonably expected to independently know about the powerful connection between his damages and the state's negligence regarding his relationship to Miller." CP at 112. He wrote that "[f]or [Timothy] to have realized such a connection between sexual abuse and betrayal trauma would require a degree of psychological sophistication beyond that of a child or a psychologically naïve and untrained adult."[4] CP at 113.

3.     Summary Judgment Hearing

At the hearing on the summary judgment motions, the parties contested whose burden it was to prove that Timothy actually knew of the connection between the alleged wrongful act and

---

[4] The State filed a cross-appeal challenging the Estate's declarations, but states in its appellate brief that it abandons its cross-appeal. The State did not challenge Dr. Kliman's opinion in its summary judgment pleadings filed in the superior court. Nevertheless, the State contends in its appellate brief that Dr. Kliman's opinion lacked an adequate foundation and is internally inconsistent. The Estate contends that the State's argument should not be considered.

Where a party does not move to strike an affidavit or any portion thereof, they waive any deficiency in the affidavit. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 352, 588 P.2d 1346 (1979). The State did not challenge Dr. Kliman's declaration in the superior court. Therefore, pursuant to RAP 2.5(a), we decline to address the State's argument raised for the first time on appeal.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55964-1-II

Timothy's injuries. The Estate argued that under *Korst v. McMahon*, 136 Wn. App. 202, 148 P.3d 1081 (2006), the State bore the burden to prove the statute of limitations had run on the claims against it. The Estate also argued that, notwithstanding the State's burden, the Estate had provided evidence that no one "heard [Timothy] saying anything about this, the inference is that [Timothy] was not aware that he had a claim against the State." Verbatim Report of Proceedings (VRP) (May 28, 2021) at 17. The State contended that the Estate had an initial burden to provide some amount of evidence that would defeat summary judgment and had failed to do so. The State disagreed that a jury could draw an inference based on the Estate's declarations and moved to strike the declarations of Jacqueline, Acevedo, and Seth based on the deadman's statute.

In its oral ruling, the superior court stated that "there has to be some evidence that the plaintiff . . . recognized his injury or part of his injuries or some of the damages within the statute of limitations period." VRP (May 28, 2021) at 18. With regard to the declarations submitted by the Estate, the superior court stated:

> As to the declarations, I ultimately don't think it matters whether the Court considers them or not. I don't think the statement that he never mentioned it creates an inference of knowledge . . . I don't think it satisfies, what I believe, is the plaintiff's burden here which is to show some amount of evidence that he only discovered his claim . . . as to some amount of injury within three years.

VRP (May 28, 2021) at 18-19. According to the superior court, the Estate had a burden of production and that burden was not met.[5]

---

[5] On appeal, the Estate contends that the superior court's ruling was erroneous because under the express language of RCW 4.16.340, the statute of limitations did not run until Timothy made a connection between the State's failure to protect him from abuse and his injuries. Although we review summary judgment rulings de novo, we note that the superior court did not expressly rule on this issue and instead granted the State's motion for summary judgment on the parties'

7

No. 55964-1-II

The superior court granted the State's motion for summary judgment and denied the Estate's motion for partial summary judgment. Regarding the declarations submitted by the Estate, the superior court did not address any alleged evidentiary issues stemming from the declarations. Instead, the superior court wrote that it had considered them to the extent that the declarants did not seek to testify regarding Timothy's beliefs regarding his claims. The superior court also wrote that the Estate failed to "provide [Timothy's] beliefs related to the accrual of his claims. As such, the Court's ruling is the same regardless of whether these declarations are considered." CP at 203.

The Estate appeals the superior court's dismissal of its claims by granting summary judgment to the State and denying the Estate's motion for partial summary judgment.

ANALYSIS

A.    LEGAL PRINCIPLES

1.    Summary Judgment

We review a superior court's order on summary judgment de novo. *Turner v. Dep't of Soc. & Health Servs.*, 198 Wn.2d 273, 284, 493 P.3d 117 (2021). Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file show the absence of any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). We review the facts and reasonable inferences in the light most favorable to the nonmoving party. *Spokane County v. State*, 196 Wn.2d 79, 84, 469 P.3d 1173 (2020).

On summary judgment, the moving party may set forth its own version of the facts or assert that the nonmoving party has failed to present sufficient evidence to support its claims. *Indoor*

---

arguments based on the burden of proof. *Turner v. Dep't of Soc. & Health Servs.*, 198 Wn.2d 273, 284, 493 P.3d 117 (2021).

No. 55964-1-II

*Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 70, 170 P.3d 10 (2007). The moving party "must 'identify those portions of the record, together with the affidavits, if any, which . . . demonstrate the absence of a genuine issue of material fact.'" *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351, 144 P.3d 276 (2006) (quoting *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 22, 851 P.2d 689, *review denied*, 122 Wn.2d 1010 (1993)). "Once the moving party has met its burden, the burden shifts to the nonmoving party to present admissible evidence demonstrating the existence of a genuine issue of material fact." *Id.* "[T]he nonmoving party 'must set forth specific facts' demonstrating a genuine issue of fact." *Boguch v. Landover Corp.*, 153 Wn. App. 595, 610, 224 P.3d 795 (2009) (quoting *Las v. Yellow Front Stores, Inc.*, 66 Wn. App. 196, 198, 831 P.2d 744 (1992)). If the nonmoving party fails to meet its burden, summary judgment is properly granted. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

2. Statutory Interpretation

The purpose of statutory interpretation is to determine and carry out the legislature's intent. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). We derive the legislature's intent from the plain language of the statute if the statute's meaning is plain on its face. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). "This plain meaning is derived from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'" *Jametsky*, 179 Wn.2d at 762 (quoting *Campbell & Gwinn, L.L.C.*, 146 Wn.2d at 11). "'A statute that is clear on its face is not subject to judicial construction.'" *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009) (quoting *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)).

No. 55964-1-II

A statute that is subject to multiple interpretations is ambiguous. *Id.* However, statutes are not ambiguous merely because multiple interpretations are conceivable. *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 221, 173 P.3d 885 (2007). When a statute is ambiguous, we may "resort to principles of statutory construction, legislative history, and relevant case law to assist us in discerning legislative intent." *Cockle v. Dep't of Lab. & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001). "Constructions that would yield 'unlikely' or 'absurd' results should be avoided." *Densley*, 162 Wn.2d at 221 (internal quotation marks omitted) (quoting *State v. Keller*, 143 Wn.2d 267, 277, 19 P.3d 1030 (2001), *cert. denied*, 534 U.S. 1130 (2002)). We apply de novo review to matters of statutory interpretation. *Campbell & Gwinn, L.L.C.*, 146 Wn.2d at 9.

3. Statute Of Limitations For Childhood Sexual Abuse Claims: RCW 4.16.340

RCW 4.16.340 is a special statute of limitations that applies to civil actions for injuries resulting from childhood sexual abuse. *B.R. v. Horsley*, 186 Wn. App. 294, 299, 345 P.3d 836 (2015). The statute provides in relevant part:

> (1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
> (a) Within three years of the act alleged to have caused the injury or condition;
> (b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or
> (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought:
> PROVIDED, That the time limit for commencement of an action under this section is tolled for a child until the child reaches the age of eighteen years.

RCW 4.16.340. The legislature provided in its findings, in pertinent part:

> (4) The victim of childhood sexual abuse may be unable to understand or make the connection between childhood sexual abuse and emotional harm or damage until many years after the abuse occurs.

10

No. 55964-1-II

> (5) Even though victims may be aware of injuries related to the childhood sexual abuse, more serious injuries may be discovered many years later.
>
> (6) The legislature enacted RCW 4.16.340 to clarify the application of the discovery rule to childhood sexual abuse cases. At that time the legislature intended to reverse the Washington supreme court decision in *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986).
>
> It is still the legislature's intention that *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986) be reversed,[6] as well as the line of cases that state that discovery of any injury whatsoever caused by an act of childhood sexual abuse commences the statute of limitations. The legislature intends that the earlier discovery of less serious injuries should not affect the statute of limitations for injuries that are discovered later.

LAWS OF 1991, ch. 212, § 1.

RCW 4.16.340(1)(c) is the specific statute of limitations at issue in this case. This statute applies in two circumstances. First, it applies to cases when the victim discovers a "qualitatively different" harm from previous harms resulting from the sexual abuse. *Carollo v. Dahl*, 157 Wn. App. 796, 801, 240 P.3d 1172 (2010). Second, it applies when a victim discovers the causal link between an injury and the abuse. *Korst*, 136 Wn. App. at 208. Under either circumstance, a subjective standard applies and the statute will begin to run only when the victim in fact discovers the connection between an "act" and their injuries. *Hollmann v. Corcoran*, 89 Wn. App. 323, 334, 949 P.2d 386 (1997). Unlike subsection (b), subsection (c) of the statute does not include the language "should have discovered." *See* RCW 4.16.340(1)(c). Therefore, the subsection (c)

---

[6] In *Tyson*, a victim of childhood sexual abuse alleged that she had repressed memories of sexual abuse and had blocked the incident from memory during the period of the statute of limitations. 107 Wn.2d at 74-75. The Supreme Court determined that the common law discovery rule would not permit for the tolling of the statute of limitations. *Id.* at 80. The Supreme Court reasoned that if it permitted a victim to bring a claim in such instances, "[a] person would have an unlimited time to bring an action." *Id.* at 79.

11

No. 55964-1-II

imposes no duty on the plaintiff to discover their injuries. *Hollmann*, 89 Wn. App. at 334; *Korst*, 136 Wn. App. at 207-08.

Our Supreme Court has acknowledged that through the legislature's amendments to RCW 4.16.340, "the Legislature specifically provided for a broad and generous application of the discovery rule to civil actions for injuries caused by childhood sexual abuse." *C.J.C. v. Corp. of Cath. Bishop of Yakima*, 138 Wn.2d 699, 712, 985 P.2d 262 (1999). Further, based on the findings and intent of the legislature, the legislature intended "to provide a broad avenue of redress for victims of childhood sexual abuse who too often were left without a remedy under previous statutes of limitation." *Id.*

B.      RCW 4.16.340(1)(c)

The Estate argues that negligence claims based on childhood sexual abuse do not accrue under RCW 4.16.340(1)(c) until a victim understands the causal connection between a negligent defendant's acts and injuries suffered by the victim. The Estate relies on sequential drafts of enacting legislation, case law, and legislative history in interpreting the meaning of RCW 4.16.340(1)(c). The State responds that under the plain language of the statute, all claims accrue when a victim makes the causal connection between sexual abuse and their injuries.[7] We hold that

---

[7] The State also argues that because it is a third party, the "general, objective discovery rule" rather than the subjective discovery rule under RCW 4.16.340(1)(c) applies to the Estate's negligence claims against it. Br. of Resp't at 53. The Estate contends the State's argument is raised for the first time on appeal and should be disregarded.

We generally do not consider issues raised for the first time on appeal. RAP 2.5(a). Nevertheless, "[a] party may present a ground for affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground." RAP 2.5(a); *see also* RAP 9.12 ("On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the

No. 55964-1-II

under the plain language of RCW 4.16.340(1)(c), negligence claims based on childhood sexual abuse accrue once the victim discovers the causal connection between *the intentional act* of sexual abuse and their injuries.

The parties do not dispute that RCW 4.16.340(1) applies to the Estate's negligence claims against the State. In *C.J.C.*, the Supreme Court considered three consolidated cases that shared the common issue of "whether negligence claims brought against [allegedly negligent defendants] who did not themselves directly perpetrate intentional acts of childhood sexual abuse . . . fall within the broad limitations period allowed under the statute." 138 Wn.2d at 704-05. The Supreme Court observed that the broad language of RCW 4.16.340(1) states that the statute "permits '[a]ll claims or causes of action' brought by 'any person' provided only that claims be 'based on intentional conduct' involving 'childhood sexual abuse.'" *Id.* at 709 (quoting RCW 4.16.340(1)). The Supreme Court concluded that the plain language of the statute applies not only to direct perpetrators of sexual abuse but also to negligent parties provided the underlying childhood sexual abuse formed the basis of the action. *Id.* at 709. In so holding, the court stated that "intentional sexual abuse is the predicate conduct upon which all claims are based, including the negligence claims." *Id.* Therefore, RCW 4.16.340 applies to all tort claims in which the "'*gravamen* of the action is [childhood sexual] abuse.'" *Id. at* 709 (quoting *DeYoung v. Providence Med. Ctr.*, 136 Wn.2d 136, 147, 960 P.2d 919 (1998)).

---

attention of the trial court."). In its reply in support of its cross-motion for summary judgment before the superior court, the State argued that the Estate bore the burden of showing that RCW 4.16.340 applied and contended that any underlying claims against it had lapsed. Because the issue of the application of RCW 4.16.340 was raised before the superior court, we consider the argument.

No. 55964-1-II

Because the Estate's claims are based on the sexual abuse that Miller inflicted on Timothy, the parties agree that the Estate's negligence claims fall within the parameters of RCW 4.16.340(1). However, the Estate argues that because cases of negligence are subject to RCW 4.16.340(1), a victim must discover a causal connection between the third party's negligent act and their injuries before the statute of limitations in subsection (1)(c) begins to run. The State, on the other hand, responds that this issue was not addressed in *C.J.C.* and contends that the Estate's argument "is an unjustified logical leap from the holding in *C.J.C.* and is directly contrary to the plain language of RCW 4.16.340." Br. of Resp't at 20. Instead, the State argues that a victim must discover a causal connection between the sexual abuse and their injuries before the limitations period set forth in subsection (1)(c) begins to run. We agree with the State.

A statutory analysis begins with the plain language of the statute. *HomeStreet, Inc.*, 166 Wn.2d at 451. RCW 4.16.340(1)(c) provides that "[a]ll claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced . . . [w]ithin three years of the time the victim discovered that the *act* caused the injury for which the claim is brought." (Emphasis added.) Here, parties disagree as to what the term "act" refers.

The term "act" is not defined by the statute. However, the only "act" referenced in RCW 4.16.340(1)(c) is the intentional childhood sexual abuse that results in injury. Also, the term "act" is used elsewhere in RCW 4.16.340. RCW 4.16.340(5), which defines childhood sexual abuse, provides:

> As used in this section*, "childhood sexual abuse" means any act* committed by the
> defendant against a complainant who was less than eighteen years of age at the time

14

No. 55964-1-II

> of the act and *which act would have been a violation of chapter 9A.44 RCW or RCW 9.68A.040 or prior laws of similar effect at the time the act was committed.*

(Emphasis added.)

The definition of "childhood sexual abuse" provides support for the interpretation that the "act" addressed in RCW 4.16.340(1)(c) refers specifically to an act that would be a violation of chapter 9A.44 RCW, "Sex Offenses," or RCW 9.68A.040, "Sexual exploitation of a minor." (Boldface omitted.) This is in line with the plain language of the statute which references the "intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse." RCW 4.16.340(1). There is no language in the statute that suggests that a different "act" other than the childhood sexual abuse that caused the injuries may form the basis for calculating the running of the statute of limitations.

The plain language of the statute shows that once a victim subjectively knows of a causal connection between an intentional act of childhood sexual abuse and their injuries, the statute of limitations as to all claims will begin to run. This interpretation is in line with the legislative intent because strict application of the common law discovery rule is avoided and the statute of limitations does not begin to run until a victim is subjectively aware of the connection between their childhood sexual abuse and their injuries. Once that connection is made, the statute of limitations begins to run on all claims based on the intentional sexual abuse, including any negligence claims based on that sexual abuse.

The Estate's interpretation that the "act" refers to the third party's negligent act requires us to ignore the statute's reference to the "act" as the sexual abuse and the absence of any use of the term "negligent" or "negligence" in the statute describing the conduct that gives rise to a claim.

15

No. 55964-1-II

The plain language of the statute shows that, rather than requiring proof that a victim subjectively knew of their *claim* against a third party, all actions accrue and the statute of limitations begins to run when a victim connects the *act* of intentional sexual abuse to their injuries.

The Estate argues that this interpretation violates precedent, particularly *C.J.C.*  We disagree.

In *C.J.C.*, the defendants argued that the definition of childhood sexual abuse outlined in RCW 4.16.340(5) narrowed application of the statute to only those claims of sexual abuse against a direct perpetrator of abuse.  138 Wn.2d at 710.  The Supreme Court rejected this argument, stating that the definition of childhood sexual abuse "does not on its face specifically include or exclude those persons who may bring claims, or against whom claims may be brought."  *Id.* at 711.  Instead, the court stated, "we read the statutory definition of 'childhood sexual abuse' as limiting only the specific predicate sexual *conduct* upon which all claims or causes of action must be based.  Thus, the alleged sexual abuse must amount to a violation of the criminal code.  If it does not, no claim of any type, against any person, lies."  *Id.* at 711-12.  Accordingly, the court held that the statute of limitations in RCW 4.16.340 was applicable to negligence cases when the predicate sexual abuse upon which the claim or cause of action is based amounted to a violation of the criminal code; the court never held that a plaintiff must make a subjective connection between a third party's negligence claims and their injuries before the statute of limitations would begin to run.

The Estate also contends that "[t]he Legislature has *acquiesced* in the application of RCW 4.16.340 to parties like the State here who make possible by their negligence the sexual abuse of children."  Reply Br. of Appellant at 24.  While we agree that the legislature has

16

No. 55964-1-II

acquiesced in *C.J.C.*'s interpretation that RCW 4.16.340 applies to third parties like the State whose negligence may have contributed to the sexual abuse of children, the legislature's acquiescence does not change the plain language of the statute—that claims accrue under RCW 4.16.340(1)(c) when a victim makes a causal connection between an act of childhood sexual abuse and injuries suffered. *See, e.g.*, *Hollman*, 89 Wn. App. at 325; *Korst*, 136 Wn. App. at 210; *B.R.*, 186 Wn. App. at 299.[8]

Based on the plain language of RCW 4.16.340(1)(c), the statute of limitations as to all claims arising from childhood sexual abuse begins to run when a victim discovers the causal connection between the intentional act of sexual abuse and their injuries.[9]

---

[8] The Estate contends that the cited cases refer to the connection of intentional conduct to injuries only because in those instances, the defendant was the direct perpetrator of the violence. The Estate cites to *Ohnemus v. State*, No. 46944-8-II, slip op. (unpublished portion) at 34 (Wash. Ct. App. July 19, 2016), https://www.courts.wa.gov/opinions/pdf/D2%2046944-8-II%20Part-Published%20Opinion.pdf, *review denied*, 186 Wn.2d 1031 (2016), a 2016 decision from this court in which the plaintiff sued the State for its negligence in preventing their abuse suffered as a child. But *Ohnemus* addressed whether the superior court properly dismissed the plaintiff's negligence claims against the State in the unpublished portion of the opinion and did not engage in any statutory interpretation of RCW 4.16.340(1)(c).

[9] We acknowledge that this holding conflicts with the 2015 Division I case, *Kirchoff v. City of Kelso*, No. 73666-3-I (Wash. Ct. App. Oct. 12, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/736663.pdf, on which the Estate relies. In *Kirchoff*, the court addressed the same issue now presented and concluded that RCW 4.16.340(1)(c) is "equally applicable to the victim who makes a causal connection between intentional abusive conduct and injury and the victim who makes a causal connection between a third party's negligent failure to protect and injury." No. 73666-3-I, slip op. at 10; *see also M.L. v. Craigslist Inc.*, No. 3:19-cv-06153-BHS-TLF, 2021 WL 5205578 (W.D. Wash. Sept. 16, 2021) (court order) (holding that the relevant inquiry under RCW 4.16.340 is when the victim connected the third party's wrongful conduct to her injuries). In so holding, Division I did not engage in a statutory analysis.

We give respectful consideration to decisions of other divisions of this court, but we are not bound by the decisions of other divisions of this court. *In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 154, 410 P.3d 1133 (2018). Further, while we may give "such persuasive value as

17

No. 55964-1-II

Here, the record shows that no genuine issue of material fact exists that Timothy connected Miller's sexual abuse to his injuries by 2008. The Estate does not argue that Timothy failed to connect Miller's sexual abuse to Timothy's alleged injuries. Also, it is undisputed that Timothy reported Miller's sexual abuse as shown by the 2006 Pierce County Sheriff Incident Report, which detailed Timothy's account of the sexual abuse inflicted by Miller. And Jacqueline sued Miller in 2007 or 2008 on Timothy's behalf for the injuries Timothy suffered as a result of Miller's sexual abuse. In the declarations the Estate filed, Acevedo acknowledged that he and Timothy had discussed the abuse that Miller inflicted on Timothy and the lawsuit that Jacqueline brought against Miller.

The undisputed facts show that by 2006, while Timothy was still a minor, Timothy had made the causal connection between Miller's sexual abuse and his injuries. Because Timothy was a minor in 2006, the statute of limitations under RCW 4.16.340(1)(c) would have tolled until Timothy reached 18 years of age. RCW 4.16.340. Timothy turned 18 years old in 2008. Under the plain language of RCW 4.16.340(1)(c), Timothy then had three years in which to bring a lawsuit against the State. The Estate commenced this lawsuit in 2020, years after the expiration of the statute of limitations. Thus, there is no genuine issue of material fact that the statute of limitations expired and the Estate's negligence claims against the State are untimely under RCW 4.16.340(1)(c).

---

[we] deem[] appropriate" to an unpublished case cited by a party, unpublished opinions of this court "have no precedential value and are not binding on any court." GR 14.1(a). Therefore, in light of *Kirchoff's* lack of any statutory analysis, we decline to follow *Kirchoff*.

18

No. 55964-1-II

C.      COMMON LAW DISCOVERY RULE

The State also argues that once claims accrue under RCW 4.16.340, negligence claims are subject to the common law discovery rule.[10]  The State contends that because the Estate failed to prove that Timothy exercised due diligence to discover the factual basis for his negligence claims, summary judgment was proper.  The Estate responds that, under *C.J.C.*, claims based on childhood sexual abuse cases may not be subject to the common law discovery rule.  We agree with the Estate.

Generally, personal injury actions accrue at the time the act or omission occurs; however, the common law discovery rule is an exception to this.  *Giraud v. Quincy Farm & Chem.*, 102 Wn. App. 443, 449, 6 P.3d 104 (2000), *review denied*, 143 Wn.2d 1005 (2001).  "The discovery rule

---

[10]  The Estate asserts that before the superior court, the State argued that RCW 4.16.340 applied to the exclusion of any other statute of limitations.  The Estate argues that the State should be estopped from claiming on appeal that multiple statutes of limitation apply in the context of childhood abuse cases.

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'"  *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 861, 281 P.3d 289 (2012) (internal quotation marks omitted) (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007)).  Below, the State acknowledged that the more specific statute of RCW 4.16.340 would apply over general statutes.  On appeal, the State continues to argue that RCW 4.16.340 applies, but it also argues that once the claim accrues it must be brought within three years unless a victim shows they exercised due diligence to discover the facts underlying their claim.  *See Funkhouser v. Wilson*, 89 Wn. App. 644, 666, 950 P.2d 501 (1998), *aff'd in part and remanded sub nom. C.J.C. v. Corp. of Cath. Bishop of Yakima*, 138 Wn.2d 699, 985 P.2d 262 (1999).  Because the State is not taking a clearly inconsistent position on appeal, we disagree with the Estate that judicial estoppel applies to the State's argument.

The Estate also contends that the Supreme Court has rejected application of the general discovery rule to claims under RCW 4.16.340(1)(c) and argues that sanctions are warranted for this frivolous argument under RAP 18.9(a).  We disagree.  RAP 18.9(a) applies when a party files a frivolous appeal.  Because the State has abandoned its cross-appeal, RAP 18.9(a) does not apply.

19

No. 55964-1-II

tolls the date of accrual until the plaintiff 'knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim.'" *Burns v. McClinton*, 135 Wn. App. 285, 299, 143 P.3d 630 (2006), *review denied*, 161 Wn.2d 1005 (2007) (quoting *Crisman v. Crisman*, 85 Wn. App. 15, 20, 931 P.2d 163, *review denied*, 132 Wn.2d 1008 (1997)). "The discovery rule does not require a plaintiff to understand all the legal consequences of the claim." *Green v. A.P.C.*, 136 Wn.2d 87, 95, 960 P.2d 912 (1998). The rule requires "that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm" and "is charged with what a reasonable inquiry would have discovered." *Id.* at 96. Pursuant to the discovery rule, the plaintiff must show that they could not have discovered the relevant facts earlier. *Giraud*, 102 Wn. App. at 449. "Unless the facts are susceptible of only one reasonable interpretation, it is up to the jury to determine whether the plaintiff has met this burden." *Id.* at 450.

The decision to extend the discovery rule to the circumstances of a case is "[f]undamentally . . . a judicial policy determination." *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 221, 543 P.2d 338 (1975); *Shepard v. Holmes*, 185 Wn. App. 730, 739, 345 P.3d 786 (2014). "In determining whether to apply the discovery rule, the possibility of stale claims must be balanced against the unfairness of precluding justified causes of action." *U.S. Oil & Refin. Co. v. Dep't of Ecology*, 96 Wn.2d 85, 93, 633 P.2d 1329 (1981). Thus, courts apply the rule in cases "where the plaintiff lacks the means or ability to ascertain that a wrong has been committed." *Id.*

In *Funkhouser v. Wilson*, the court applied the common law discovery rule to a claim of negligence based on underlying conduct of childhood sexual abuse *after* determining that RCW

20

No. 55964-1-II

4.16.340(1)(c) did not apply to the claim. 89 Wn. App. 644, 666, 950 P.2d 501 (1998), *aff'd in part and remanded sub nom. C.J.C. v. Corp. of Cath. Bishop of Yakima*, 138 Wn.2d 699, 985 P.2d 262 (1999),. The court stated that "the common law discovery rule applies to all statutes of limitation, in the absence of legislation limiting the application of the rule." *Id.* The State argues that we should rely on *Funkhouser* and apply the rule to this case. We disagree.

As discussed above, in *C.J.C.*, the Supreme Court held that RCW 4.16.340 "encompasses causes of action sounding in negligence against parties who did not themselves directly perpetrate acts of childhood sexual abuse, but who allegedly failed to protect child victims or to otherwise prevent the abuse." *C.J.C.*, 138 Wn.2d at 714. The court held that, on this issue, the *Funkhouser* court was reversed. *Id.* Because both intentional and negligence claims are subject to the discovery rule outlined in RCW 4.16.340, they are not subject to the common law discovery rule. We decline to apply the common law discovery rule to the facts of this case.

D.      BURDEN OF PROOF UNDER RCW 4.16.340(1)(c)

As noted above, we apply de novo review to issues decided on summary judgment. *Turner*, 198 Wn.2d at 284. Although we decide that the Estate's negligence claims against the State are untimely based on the plain meaning of RCW 4.16.340(1)(c), we exercise our discretion and address the arguments on burden of proof.

The Estate argues that the superior court improperly imposed the burden of proof on the Estate to prove its claim was not barred by the statute of limitations. The Estate insists that it was the State's burden to provide evidence that Timothy actually knew of his claims against the State.

Here, the superior court granted the State's motion for summary judgment on the issue of the statute of limitations. Therefore, we view the facts and reasonable inferences in the light most

21

No. 55964-1-II

favorable to the nonmoving party, the Estate. *Spokane County*, 196 Wn.2d at 84. This court should grant summary judgment "only if reasonable minds could reach but one conclusion." *Afoa v. Port of Seattle*, 176 Wn.2d 460, 466, 296 P.3d 800 (2013).

The parties both argue that *Korst* should be interpreted in their favor. In *Korst*, the plaintiff appealed after a bench trial,[11] contending that the trial court erred in dismissing her claims brought under RCW 4.16.340(1)(c) for damages based on the statute of limitations. 136 Wn. App. at 204. The evidence before the court included a letter that Korst wrote to her parents in 1995, which included a complaint that her father raped her when she was a child. *Id.* Seven years after writing the letter, Korst saw a counselor for problems she was having with her son and she disclosed the sexual abuse. *Id.* Korst was subsequently diagnosed with PTSD as a result of the sexual abuse by her father. *Id.* Korst learned that the sexual abuse probably caused the issues she later developed with her son. *Id.* After a bench trial, the defendants moved for a directed verdict on the grounds that Korst's claims expired under RCW 4.16.340 based on the letter she wrote to her parents. *Id.* at 205. The trial court granted the dismissal, holding that the letter showed that Korst had connected her father's sexual abuse to her physical and emotional problems in 1995. *Id.*

On appeal, the court reversed, stating that "the defendant bears the burden of proof as to the statute of limitations." *Id.* at 208. Therefore, the defendants were required "to prove that Korst actually knew that the sexual abuse caused her symptoms and that she failed to bring her claim before the statute of limitations had expired." *Id.* The court held that Korst's letter showed that Korst resented her father, but the letter did not prove that Korst knew that he had caused her

---

[11] The Estate incorrectly states that *Korst* is a summary judgment case.

No. 55964-1-II

injuries. *Id.* at 209. The court also held that the defendant bears the burden of showing that the statute of limitations in RCW 4.16.340(1)(c) has run. *Id.* at 208. The court stated that RCW 4.16.340(1)(c) is a "special statute of limitations" that "does not begin running when the victim discovers an injury. Instead, it specifically focuses on when a victim of sexual abuse discovers the causal link between the abuse and the injury for which the suit is brought." *Id.*

Here, the superior court granted summary judgment to the State based on the State's claim that the Estate's claim was untimely. As the moving party, the State bore the burden of showing the absence of a genuine issue of material fact. Therefore, the State bore the burden of presenting evidence to show that the statute of limitations in RCW 4.16.340(1)(c) had run due to Timothy's awareness of the causal connection between Miller's sexual abuse and his injuries. As discussed above, the undisputed evidence shows that Timothy made the causal connection between Miller's sexual abuse and his injuries by 2006. With the tolling of the statute of limitations until Timothy turned 18 years old in 2008, Timothy's claims against the State expired in 2011, well before the Estate's lawsuit in 2020. Thus, the State met its burden of proof under RCW 4.16.340(1)(c).

E.     COSTS ON APPEAL

The Estate requests costs on appeal. Although the Estate provides no legal support for its request, RAP 14.2 permits for an award of costs to the substantially prevailing party on review. *Hurley v. Port Blakely Tree Farms LP*, 182 Wn. App. 753, 774-75, 332 P.3d 469 (2014), *review denied*, 182 Wn.2d 1008 (2015) ("[The party] makes no argument as to why attorney fees under RAP 18.1 are proper. Therefore, [the party] is entitled only to an award of allowable costs and

23

No. 55964-1-II

expenses under RAP 14.2 and 14.3."). Because we hold that the superior court properly dismissed the Estate's claims, we deny the Estate's request for costs on appeal.

CONCLUSION

Under RCW 4.16.340(1)(c), the statute of limitations begins to run on all claims arising from childhood sexual abuse when the victim discovers the causal connection between the intentional act of sexual abuse and their injuries. Also, claims arising from childhood sexual abuse are subject to the discovery rules outlined in RCW 4.16.340 and are not subject to the common law discovery rule. Finally, the party asserting that the statute of limitations has run under RCW 4.16.340 bears the burden of proof. Applying these principles to the case before us, we affirm the superior court's summary judgment dismissal of the Estate's claims against the State.

Lee, J.

I concur:

Worswick, J.

24

No. 55964-1-II

CRUSER, A.C.J. (dissenting) – I respectfully dissent from the majority's opinion at Section B of the analysis, holding that "under the plain language of RCW 4.16.340(1)(c), negligence claims based on childhood sexual abuse accrue once the victim discovers the causal connection between the intentional act of sexual abuse and their injuries." Majority at 13 (emphasis omitted). I also dissent from the majority's holding that the State met its burden of proving that that statute of limitations had run on Wolf's claims against the State. Majority at 23.

RCW 4.16.340 is the statute at issue in this case. It provides:

(1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
(a) Within three years of the act alleged to have caused the injury or condition;
(b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or
(c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought.

RCW 4.16.340(1). The parties agree that RCW 4.16.340(1)(c) governs this case.

The majority holds that for purposes of RCW 4.16.340(1)(c), the term "act" does not refer to the negligent conduct of the third party that caused the injury for which the claim is brought. Rather, the majority holds, the term "act" refers to the conduct of a *different tortfeasor*—the perpetrator of the childhood sexual abuse. Majority at 14-16. I disagree with the majority and would hold that the "act" under subsection (c) refers to the negligent conduct of the third party that caused the injury for which the particular claim is brought—here, a negligence claim based on underlying childhood sexual abuse. Thus, Wolf's claim accrued when he made the causal connection between the negligence of the State of Washington and the injury caused by that negligence.

No. 55964-1-II

As described by the majority, the supreme court has held that RCW 4.16.340 encompasses causes of action for negligence against third parties "who did not themselves directly perpetrate acts of childhood sexual abuse, but who allegedly failed to protect child victims or to otherwise prevent the abuse." *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 714, 985 P.2d 262 (1999). The court noted the expansive scope of the statue, which permits " '[a]ll claims or causes of action' brought by 'any person' provided only that claims be 'based on intentional conduct' involving 'childhood sexual abuse.' " *Id.* at 709 (alteration in original) (quoting RCW 4.16.340(1)).

Our colleagues in Division I have considered the issue currently before us and, after applying our supreme court's holding in *C.J.C.*, concluded that "RCW 4.16.340(1)(c) is equally applicable to the victim who makes a causal connection between intentional abusive conduct and injury and the victim who makes a causal connection between a third party's negligent failure to protect and injury." *Kirchoff v. City of Kelso*, No. 73666-3-I, slip op. at 10 (Wash. Ct. App. Oct. 12, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/736663.pdf. In the latter circumstance, Division I held, "the inquiry is when in fact [the victim] discovered the causal connection between [the third party's] allegedly negligent investigation and [the victim's] injuries." *Id.* at 11. Although I recognize that this case is not binding on us,[12] I agree with the analysis from Division I and would hold that the "act" under subsection (c) is the negligence of the third party that caused the injury for which the claim is brought. This is consistent with the plain language of RCW 4.16.340(1)(c), which provides for a cause of action "[w]ithin three years

---

[12] *See In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 154, 410 P.3d 1133 (2018); GR 14.1.

No. 55964-1-II

of the time the victim discovered that *the act caused the injury for which the claim is brought*." (Emphasis added.)

The majority's opinion rests in part on the supposition that because RCW 4.16.340(5) defines childhood sexual abuse as "any *act* committed by the defendant against a complainant who was less than eighteen years of age at the time of the act and which act would have been a violation of chapter 9A.44 RCW or RCW 9.68A.040" or other similar law at the time, then all references to "act" in RCW 4.16.340 are necessarily references to childhood sexual abuse committed by the perpetrator of the abuse. (Emphasis added.) From there, the majority concludes that the plaintiff's cause of action *against a third party for its acts of negligence* accrues when the plaintiff makes the causal connection between the childhood sexual abuse perpetrated by the abuser and the specific injury caused by that abuse. *See* majority at 14-16.

I cannot join the majority in this logical fallacy. The fact that "childhood sexual abuse" is described as an "act" does not, in my view, mean that every reference to an "act" in the statute is an act of childhood sexual abuse. Consider a hypothetical: The State knowingly places a child in a home where the child will be living with a person known by the State to be a perpetrator of child sexual abuse. The child is repeatedly raped during their stay in this home. At some point the child victim becomes aware of the injury caused to them by the intentional acts of childhood sexual abuse perpetrated against them by the sexual abuser. But it is only many, many years after *that* discovery that the victim learns that the State knowingly placed them in the home with a person known by the State to be a perpetrator of child sexual abuse. It makes little sense to hold, as the majority does, that the cause of action against one tortfeasor (here, the State for its negligent act) accrued when the victim became aware of the separate injury caused to them by a *different*

27

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55964-1-II

*tortfeasor* (the actual perpetrator of the sexual abuse). I do not agree with the majority's insistence the term "act" used in all three subsections of RCW 4.16.340(1) necessarily refers to the *same act*.

Moreover, the majority opinion overlooks critical language in subsection (c), namely that the injury in question is the injury "*for which the claim is brought*." RCW 4.16.340(1)(c) (emphasis added). I do not agree that the injury caused to a plaintiff by the State's negligence is the same injury caused by the actual sexual abuse inflicted by the perpetrator of the abuse. As the supreme court observed in *C.J.C.*, the childhood sexual abuse is the predicate for all claims *related* to that abuse, including negligence claims against professionals and other third parties, but the injury caused by the conduct of each tortfeasor is not necessarily the same.

> . . . [I]ntentional sexual abuse is the predicate conduct upon which all claims are based, including the negligence claims. The alleged sexual abuse is essentially an element of the plaintiffs' negligence claims. Absent the abuse, plaintiffs would not have suffered any injury and their negligence claims could not stand. Thus, the "gravamen" of plaintiffs' claims is that defendants are liable for injuries resulting from acts of intentional sexual abuse. Equal to any other element of the negligence causes of action, the injury resulting from the abuse "forms the grounds" for the claims. As such, the negligence claims are "based on intentional conduct" within the meaning of the statute because they stem from injuries suffered as a result of intentional childhood sexual abuse.

*C.J.C.* 138 Wn.2d at 709–10 (internal citation omitted).

For the reasons set forth above, I dissent from the majority's holding that negligence claims against third parties accrue under RCW 4.16.340(1)(c) once the victim discovers the causal connection between the intentional act of sexual abuse and their injuries, as well as from the

No. 55964-1-II

majority's holding that the State met its burden of proving that that statute of limitations had run on Wolf's claims against the State.[13]

                                  CRUSER, A.C.J.

---

[13] I concur with the majority's holdings that the common law discovery rule does not apply to this case and that the State bore the burden of proof under RCW 4.16.340(1)(c). Majority at 21, 23.